[No. 57180-5. En Banc. January 10, 1991.]

HAROLD HUTCHINS, ET AL, *Appellants*, v. 1001 FOURTH AVENUE ASSOCIATES, ET AL, *Respondents*.

---

218

*Ziontz, Chestnut, Varnell, Berley & Slonim,* by *Marc D. Slonim* and *Daniel R. Fjelstad,* for appellants.

*Lane Powell Moss & Miller,* by *Suzanne Kelly Michael* and *Janice E. Ellis–Dick,* for respondents.

*Steven T. Russell* on behalf of Washington Defense Trial Lawyers, amicus curiae for respondents.

BRACHTENBACH, J.—Plaintiff Harold Hutchins appeals from a summary judgment of dismissal of his negligence claim against 1001 Fourth Avenue Associates, JMB Property Management Company, JMB Property Management Corporation, and JMB Realty (defendants). At issue is whether an occupier of land has a duty to provide security measures on the premises to protect passersby from the risk of criminal assault on the premises. The trial court held that defendants had no such duty. We affirm.

On August 6, 1987, at about 9:30 p.m., plaintiff was returning to his hotel room in downtown Seattle after dinner at a restaurant. As he made his way up the hill to Third Avenue, a stranger ran across Spring Street and joined him, engaging him in conversation. As the two men approached an armored car entryway into the 1001 Fourth Avenue Building, the stranger pushed plaintiff into the armored car bay, and he and an accomplice waiting in the entryway assaulted and robbed plaintiff. Plaintiff was injured in the assault.

Plaintiff brought suit against defendants, claiming that they breached the duty of persons who own or control

buildings adjacent to a public way to maintain the buildings free of any conditions posing unreasonable dangers to passersby. Plaintiff asserted that the armored car entry area was pitch black, that the vehicle entryway was inadequately lighted, that defendants knew or should have known the car bay was in a high crime area, and that defendants knew or should have known that the unlighted entryway provided a place of concealment for individuals waiting to assault passersby and a place in which an assault might occur out of the public view. He sought damages for his injuries and his wife sought loss of consortium damages.

Defendants moved for summary judgment, which the trial court granted, holding as a matter of law that defendants had no duty to plaintiff as a passerby to maintain its building in a manner that did not create an unreasonable risk of criminal assault. Plaintiff appealed; we accepted the Court of Appeals' certification of the case to this court.

Summary judgment should be upheld if the pleadings, affidavits, depositions and admissions on file demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Christen v. Lee,* 113 Wn.2d 479, 488, 780 P.2d 1307 (1989).

■■ The essential elements of a negligence action are (1) the existence of a duty to plaintiff; (2) breach of that duty; (3) resulting injury; and (4) proximate cause between the breach and the injury. *Christen,* at 488; *Pedroza v. Bryant,* 101 Wn.2d 226, 228, 677 P.2d 166 (1984). The existence of duty is a question of law. *Pedroza,* at 228.'Here, the trial court held that as a matter of law defendants owed plaintiff no duty as claimed.

Although plaintiff seems to suggest that a duty is logically owed here based upon ordinary negligence principles, in actuality plaintiff asks this court to expand traditional liability principles and to impose a duty on a land occupier to provide security from criminal assault to those passing by on public sidewalks. Two areas of negligence law are particularly relevant to the issue before us: principles of

premises liability, and the extent to which one has a duty to protect others from the intentional criminal acts of third parties. We address these areas separately below, but recognize that they are not separate, completely discrete areas of law applicable to the circumstances of this case.

■ As to the first area of negligence law, plaintiff relies on the duty owed by a possessor of land to maintain his or her premises so as not to pose a danger to those passing by on adjacent highways or sidewalks. As some background for discussion of this particular land possessor duty, some generalizations are helpful. The first is that where premises liability is concerned, weight should "be given to the interest in the free use of the property . . .." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 57, at 387 (5th ed. 1984) (hereafter *Prosser & Keeton*). Consideration of this interest affects both "the duty to exercise any care at all, and the reasonableness of the defendant's conduct." *Prosser & Keeton* § 57, at 387.

The second general point is that in *Younce v. Ferguson,* 106 Wn.2d 658, 724 P.2d 991 (1986) this court declined to abandon the common law classifications of entrants upon land—invitees, licensees, and trespassers—in favor of a single standard of reasonable care under all the circumstances. Several reasons were given for adhering to the traditional classifications, and the corresponding duty owed by the possessor of land. One reason given is that the classifications have been applied and developed over the years, offering predictability and stability. *Younce,* at 666. Further, the court expressed concern about the extent to which a landowner could be subject to liability. *Younce,* at 666.

■ Three ideas may be drawn from *Younce* which are important in the circumstances of this case: (1) a possessor of land should not be subject to unlimited liability; (2) a possessor of land is not an insurer as to all those who may be affected by activity involving the possessor's premises; and (3) a possessor of land has no duty as to all others under a generalized standard of reasonable care under all the circumstances.

As to plaintiff's status in this case, he was clearly not an invitee because he was not on the land for a business purpose nor was he on the premises as a member of the public at defendants' invitation. *See Younce,* at 667. Plaintiff also was not a licensee. His entry onto the premises was not by virtue of consent or permission on defendants' part. *See Younce,* at 667. Plaintiff was pushed onto the property by muggers. Arguably plaintiff is best characterized as an involuntary trespasser at the time he was robbed. He was, however, a passerby at the beginning of the assault.

A possessor of land owes a common law duty to "prevent artificial conditions on his land from being unreasonably dangerous to highway travelers." (Footnote omitted.) 5 F. Harper, F. James & O. Gray, *Torts* § 27.4, at 156 (2d ed. 1986); *see* Restatement (Second) of Torts § 368 (1965). The duty is founded on the principle that "[t]he public right of passage carries with it . . . an obligation upon the occupiers of abutting land to use reasonable care to see that the passage is safe." *Prosser & Keeton* § 57, at 388. This duty applies to those passing by on a public walk. *Munger v. Union Sav. & Loan Ass'n,* 175 Wash. 455, 458, 27 P.2d 709 (1933). It is this duty which plaintiff urges was breached in this case.

In *Poth v. Dexter Horton Estate,* 140 Wash. 272, 248 P. 374 (1926), a person waiting for a bank to open was struck by a window shade which fell from an upper story of the building. The court stated that "[i]t was the appellant's duty to see that the building was so constructed and maintained as not to be a source of danger to the users of the street in its front." *Poth,* at 274. Breach of this duty constituted negligence. *Poth,* at 274. *See also, e.g., Collais v. Buck & Bowers Oil Co.,* 175 Wash. 263, 27 P.2d 118 (1933); *cf. Mills v. Orcas Power & Light Co.,* 56 Wn.2d 807, 355 P.2d 781 (1960).

*Poth* concerns the duty to construct and maintain artificial structures in a way which avoids creating an unreasonable risk of harm to passersby. The duty of a land possessor to those outside the premises involves more, however, than

just seeing that parts of the structure do not impact pas-sersby. "The occupier of land generally owes a duty of rea-sonable care to prevent *activities* and *conditions* on his land from injuring persons or property outside his land . . .". (Italics ours.) 5 F. Harper, F. James & O. Gray, *Torts* § 27.19, at 307 (2d ed. 1986); *see* Restatement (Second) of Torts § 371 (1965) (regarding land possessor activities).

In some cases passersby have been injured as a result of a combination of activity on the land and the condition of the premises. *E.g., Collais* (operation of service station involv-ing facilities for storing waste oil; oil spilled on sidewalk; plaintiff slipped on oil and was injured); *Misterek v. Wash-ington Mineral Prods., Inc.,* 85 Wn.2d 166, 531 P.2d 805 (1975) (fences in need of repair and keeping of horses on premises; horses escaped with resulting injury to travelers in a vehicle). In both of these cases the court based liability on the duty to maintain the premises so as not to injure those using the adjacent highway.

In the case at hand, the condition of the premises alleged by plaintiff concerns the design, color, and adequacy of lighting of the armored car bay. These artificial conditions, in and of themselves, did not create a risk of harm to a passerby, unlike the window shade which physically struck the passerby in *Poth.* Nor are the circumstances here typi-cal of the kind in *Collais.* Defendants did not themselves engage in some activity or business on the premises which posed a direct danger to passersby or others off the prem-ises.

Instead, the injury to plaintiff resulted from the inten-tional criminal conduct of third parties. Plaintiff claims that the duty owed by a land possessor to those passing by on public ways includes the duty to avoid unreasonable risks of foreseeable criminal assault on the passersby.

██ The general rule at common law is that a private person does not have a duty to protect others from the criminal acts of third parties. *See* Annot., *Private Person's Duty and Liability for Failure To Protect Another Against Criminal Attack by Third Person,* 10 A.L.R.3d 619, § 3

(1966). Certain exceptions to this rule provide for liability under particular circumstances.

As a matter of premises liability alone (keeping in mind there is some artificiality in severing premises liability from duty relating to criminal conduct of third parties), the usual case where a duty may be found to protect others from third party criminal assault involves a business and its invitee. *See generally* J. Page, *Premises Liability* §§ 11.2–11.4, 11.6–11.12 (2d ed. 1988) and cases cited therein. Some courts also find such a duty in the case of landlord and tenant. *See generally* J. Page §§ 11.13–11.17; Annot., *Landlord's Obligation To Protect Tenant Against Criminal Activities of Third Persons,* 43 A.L.R.3d 331 (1972). Defendants here had no such relationship with plaintiff.

Some authority suggests that a possessor of land may also be liable for the criminal conduct of third parties whom the possessor allows to enter upon the land, in that possession and control of the land may give the land possessor a power of control over those third parties. *Prosser & Keeton* § 57, at 392. However, where the conduct causing the injury is that of trespassers, "[t]here have been surprisingly few cases dealing with liability for the conduct of trespassers and others acting without the possessor's knowledge or consent." *Prosser & Keeton* § 57, at 392. The American Law Institute states: "The Institute expresses no opinion as to whether there may not be a duty of reasonable care to control the conduct of the third person . . . where the third person is a trespasser . . .". Restatement (Second) of Torts § 318 caveat (1965). One view of the matter is that where conduct of a trespasser on the premises poses a risk of harm to others, the land possessor "is not liable for such conduct, or for conditions resulting from it, until he knows or should know of the danger, but that once he has had a reasonable opportunity to discover the situation he is under a duty to exercise proper care to prevent harm to others." (Footnote omitted.) *Prosser & Keeton* § 57, at 392.

Thus, in *Drake v. State,* 97 Misc. 2d 1015, 416 N.Y.S.2d 734 (1979), *aff'd,* 75 A.D.2d 1016, 1017, 432 N.Y.S.2d 676 (1980), the State of New York, as owner of a campsite, did nothing to protect travelers on adjacent highways from activities of persons who had taken over the park and conducted armed patrols; in one prior instance firearms were discharged. The New York court emphasized that it was treating the landowner–State exactly as it would any private landowner, and held that the State breached its landowner's duty to abate a known dangerous condition existing on its lands. The court reasoned that the State owned the campsite, the activities of the persons on the site clearly posed a danger to travelers, the State had notice of the imminent danger, and it had a duty to take such action within its power to protect against the known danger.

We do not propose to decide here whether a possessor of land owes a duty to those off the premises, including those passing by on a public way, arising out of the criminal activity of trespassers on the premises where that activity is known to the land possessor. We need not reach that question because there is no evidence in this case that defendant actually knew of the criminal activity of the muggers. The materials presented to the trial court for its decision on the summary judgment motion contain no evidence that defendants actually knew that muggers were using the armored car bay as a place of concealment to facilitate criminal assault on those passing by. To the contrary, the only evidence regarding actual knowledge by defendants is that when a security guard inspected the entryway within the hour before the assault, he did not see anyone loitering in any of the automobile entryways. Clerk's Papers, at 20 (Affidavit of Don Costlow).

*Prosser & Keeton* propose that if the land possessor "should have known" of the trespasser's activity which posed harm to others, liability may be found. It is not clear whether the activity of which the land possessor should have known is that of the particular trespasser who actually caused the harm complained of, or the activity of others

which should lead the land possessor to anticipate such harm. It is also unclear whether this proposed analysis should be applied in the case of criminal activity of third parties, in light of the general common law rule that one does not owe a duty to others to protect them from the *criminal* activity of third parties.

 Without deciding these questions, we think that at the very least the land possessor has no duty arising from the trespasser's criminal activity on the land absent notice to the possessor. Whether notice of these muggers' activities or intended conduct, or notice in general of the criminal activity of others, or either, would suffice, is an open question. The evidence in this case fails to establish any notice to defendants sufficient to give rise to any duty. Vandalism and loitering do not pose a danger to those off the premises, and we refuse to conclude that such activity might serve as notice to a possessor of land of trespasser's intentional criminal assault of passersby.

We note that we are not at this point concerned with foreseeability of harm as a limitation upon the scope of defendant's duty. *See generally Christen v. Lee,* 113 Wn.2d 479, 492, 780 P.2d 1307 (1989). We are here concerned with whether there is any duty at all. Thus, our inquiry is not whether the kind of harm which actually occurred should have been foreseen as the kind of harm from which defendant had a duty to protect plaintiff. Instead, the inquiry is whether a possessor of land should have known of a trespasser's criminal activity on the premises which posed a threat of harm to those passing by—if not, there can be no duty. If the answer to the latter inquiry is yes in a future case, further consideration by this court upon full briefing by the parties will be needed to decide the issue we here do not decide, *i.e.,* whether a land possessor might ever have a duty to protect passersby from known criminal activity of trespassers on the premises.

Plaintiff's argument involves more, however, than a simple assertion that a landowner has a duty to protect those passing by from the criminal conduct of third parties on the premises. Plaintiff maintains that defendants' construction

and maintenance of the premises created an increased risk of harm to passersby from criminal assault by persons using the armored car bay as a place of concealment. The plaintiff contends this conduct by the land possessor gives rise to a duty to protect those off the premises, *i.e.,* those passing by, from the increased risk thus created.

Defendants argue, however, that absent a special relationship between the parties, there is no duty to protect others from third party criminal conduct in any event. Defendants argue that the special relationships doctrine is embodied in premises liability doctrine. Plaintiff's contention and defendants' argument pertain to the second significant area of negligence law which is relevant in this case—the extent to which one has a duty to protect another from third party misconduct. As noted above, and as our discussion below demonstrates, this area of law overlaps to some extent with our discussion of premises liability.

As defendant maintains, this court has recognized the general rule that there is usually no duty to prevent a third party from causing physical injury to another, unless "a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct." *Petersen v. State,* 100 Wn.2d 421, 426, 671 P.2d 230 (1983); *Youngblood v. Schireman,* 53 Wn. App. 95, 99–100, 765 P.2d 1312 (1988); Restatement (Second) of Torts § 315 (1965).

Several relationships exemplify the category of cases where the defendant has a special relationship with the foreseeable victim, such that a duty is owed to protect that person from the physical injury resulting from the conduct of third parties. In *McLeod v. Grant Cy. Sch. Dist. 128,* 42 Wn.2d 316, 255 P.2d 360 (1953), a schoolgirl was raped in an unlocked room under the bleachers in the gym during a play period unsupervised by adults. The court stated that two factors are involved in determining whether the school district breached a legal duty: the relationship between the parties, and the general nature of the risk. As to the first, the court found that the school district had a duty to protect the students in its custody from reasonably anticipated

dangers. *McLeod,* at 319–20. In the case of the school pupil, one rationale for imposing a duty is that the victim is placed under the control and protection of the other party, the school, with resulting loss of control to protect himself or herself. J. Page, *Premises Liability* § 11.2, at 292 (2d ed. 1988) (citing and quoting Bazyler, *The Duty To Provide Adequate Protection: Landowners' Liability for Failure To Protect Patrons From Criminal Attack,* 21 Ariz. L. Rev. 727, 736 (1979)). The same rationale serves to explain the duty of an innkeeper to protect guests from third party criminal attack. J. Page § 11.2, at 292.

Other relationships falling into the general group of cases where the defendant has a special relationship with the victim are also protective in nature, historically involving an affirmative duty to render aid. The defendant may therefore be required to guard his or her charge against harm from others. Thus a duty may be owed from a carrier to its passenger, from an employer to an employee, from a hospital to a patient, and from a business establishment to a customer. *Prosser & Keeton* § 56, at 383.

The other category of cases, generally speaking, involving a special relationship giving rise to a duty to protect another from physical injury caused by a third party is where the defendant is in a special relationship with that third party actor. For example, this court has recognized that under certain circumstances the special relationship between psychiatrist and patient may give rise to a psychiatrist's duty to take reasonable precautions to protect one who might foreseeably be endangered by his patient's drug–related mental problems. *Petersen,* at 428. The psychiatrist in *Petersen* knew that the mental patient was potentially dangerous, that his behavior could be unpredictable, and that if he used certain illegal drugs again, particularly if he did so without taking prescribed medication, he could become delusional and hallucinogenic and present a risk to others. The court reasoned the psychiatrist could have petitioned the court for a 90–day commitment order, or otherwise taken reasonable steps to

protect others; instead the patient was released from Western State Hospital.

The relationship in *Petersen,* which involved an institutionalized patient, is one generally described as being "custodial by nature, requiring the defendant to control his charge and to guard other persons against his dangerous propensities." (Footnote omitted.) *Prosser & Keeton* § 56, at 383. This concept that one may have a duty to control the actions of another (as opposed to a victim placed in the care of defendant) is described as also including, among others, the relationships between employer and employee, tavern keeper and intoxicated guest, physician and assistants, hospital and unqualified physician, and parents and children. *Prosser & Keeton* § 56, at 383. *See, e.g., Bartlett v. Hantover,* 9 Wn. App. 614, 620–21, 513 P.2d 844 (1973) (employer–employee), *rev'd on other grounds,* 84 Wn.2d 426, 526 P.2d 1217 (1974); *Christen v. Lee,* 113 Wn.2d 479, 780 P.2d 1307 (1989) (commercial purveyor of alcoholic beverages and patron).

■ Leading commentators have included in this list the obligation of a possessor of land to exercise reasonable control over those on the premises for the protection of those outside the premises. *Prosser & Keeton* § 56, at 384. As is apparent, this is an area where general principles of premises liability are relevant. As we said, the two areas of negligence law we address in this case overlap, and applying separate legal analyses is admittedly a matter of convenience rather than a matter of two strictly separate sets of legal principles. In any case, as noted above, one's possession of land may give the possessor control over the conduct of others the land possessor allows to enter, so that the possessor is required to exercise that control for the protection of persons off the premises. *Prosser & Keeton* § 57, at 392; *see also* Restatement (Second) of Torts § 318 (1965). As a matter of the parties' particular relationship, it is clear that the rule is not a statement of unlimited duty as to all those engaging in activity on the land, however, but is generally limited to cases where the third party is allowed to enter as a matter of consent or permission. Thus, the

category does not include trespassers who are on the land whose activities are unknown to the land possessor. *See generally De Ryss v. New York Cent. R.R.*, 275 N.Y. 85, 9 N.E.2d 788 (1937).

■ Aside from special relationships of the sort described above, defendants appear to reason that one never has a duty to protect others from third party criminal conduct. However, in some exceptional circumstances a defendant may be liable for harm caused by a third party absent a "special relationship" of the sort described above. According to the Restatement (Second) of Torts § 302B (1965), where the third party conduct is intentional in nature,

> [a]n act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

Comment *d* to this section explains that normally the defendant has much less reason to anticipate intentional misconduct on the part of a third party than the defendant has to anticipate negligence on the part of a third party. In general, the comment continues, the defendant may proceed upon the assumption that others will obey the law. *See Prosser & Keeton* § 33, at 201. Comment *e* explains that there are nevertheless situations where the defendant is required to anticipate and guard against the intentional misconduct of third parties. Subcomments describe, among other things, the special relationships discussed above, and also list other instances where a duty might be found; for example, where the defendant's affirmative act is intended to or likely to defeat some protection plaintiff has set in place (comment *e*(C)).

A duty may also exist where defendant affirmatively brings about "an especial temptation and opportunity for criminal misconduct" which will give rise to a duty on defendant's part to take precautions against it. *Prosser & Keeton* § 33, at 201. Of significance to this case, § 302B comment *e*(G) of the Restatement (Second) of Torts describes circumstances "[w]here property of which the

actor has possession or control affords a peculiar tempta-
tion or opportunity for intentional interference likely to
cause harm." The illustrations to this subcomment give as
examples (1) where the defendant leaves dynamite caps in
an open box next to a playground where small children
play. A very young child finds the caps, strikes them with a
rock, and the resulting explosion injures another child.
Illustration 13. (2) "In a neighborhood where young people
habitually commit depredations on the night of Hallow-
een," defendant leaves a large reel of wire cable at the top
of a hill. Some boys roll the reel down the hill on Hallow-
een, and it injures another. Illustration 14. In both instan-
ces defendant may be found liable for the injury to the
other, although the Restatement indicates that in the latter
case defendant would probably not be liable for leaving the
reel on the hill on any night other than Halloween.

Other cases which have characteristics placing them in
this category are *Kush v. Buffalo,* 59 N.Y.2d 26, 449 N.E.2d
725, 462 N.Y.S.2d 831 (1983) (dangerous condition on high
school property consisted of unsecured chemicals stored in
place accessible by school children; chemicals removed by
15–year–old students who dropped them in bushes outside
school for later retrieval; young child playing on grounds
found the chemicals, played with them and matches, and
was injured when chemicals exploded) and *Russo v. Grace
Inst.,* 145 Misc. 2d 242, 546 N.Y.S.2d 509, *aff'd,* 153 A.D.2d
820, 545 N.Y.S.2d 547 (1989).

In *Russo,* the court was faced with the question to what
extent a possessor of land had a duty to prevent possible
criminal use of its structure on the land which might cause
harm to others off the property. Defendant construction
company had erected scaffolding around defendant land-
owner's building in order to do work on the building.
Plaintiff alleged robbers climbed the scaffolding, which was
immediately adjacent to terraces of plaintiff's landlord's
building, and bound and robbed him.

The court noted that generally a landowner owes no duty
to the world at large, but recognized the general rule that

one must maintain his own property so as not to create an unreasonable risk to those off the premises. The court also noted that in New York considerations of liability dependent on the classification of the injured party had been abolished,[1] and then reasoned that a duty was owed to those in immediately adjacent premises who may be harmed when made vulnerable to attack. The court said: "[S]caffolding is as accessible to climbers as is a ladder, an open invitation to the nimble thief. We should be prepared to acknowledge that he who invites strangers to ravage his neighbor's land is not without guilt." *Russo*, at 246–47.

In cases of the type described by § 302B comment *e*(G) of the Restatement, like *Russo*, duty is not owed unless the defendant's property affords a special (or peculiar) temptation or opportunity for crime. By definition, whatever there is about defendant's property which will require the defendant to anticipate and guard against the intentional criminal misconduct of another, the defendant must have affirmatively created or exposed plaintiff to "a recognizable high degree of risk of harm . . .". Restatement (Second) of Torts § 302B comment *e* (1965).

Here, it is not enough to say with the benefit of hindsight that a high degree of risk of crime was created because these defendants' property in fact provided a place of concealment for muggers. Instead, cases where this exception to the general rule (of no liability for the criminal acts of third parties) is applied involve some condition of the property which, by its nature, is quite out of the ordinary, *i.e.*, presenting a *special* or *peculiar* temptation or opportunity, and involve a *high* degree of risk of harm.

The condition of defendants' property is not such as to create a *special* or *peculiar* temptation or opportunity for

---

[1] In this regard, New York law is fundamentally different from Washington law, in that this court has not abolished the common law classifications of entrants on the land. *Younce v. Ferguson*, 106 Wn.2d 658, 724 P.2d 991 (1986). Insofar as the present issue is concerned, however, both *Kush* and *Russo* are instructive nevertheless.

crime. Criminal conduct such as occurred here is an unfortunate fact of urban life. Cities are filled with buildings having doorways, entries, adjacent alleys, walls, vehicle entries, and countless other nooks and crannies providing concealment for criminals. Defendants' construction and maintenance of its property did not, as a matter of law, create a special or peculiar temptation for criminal conduct of the sort which might give rise to liability.

Moreover, if we were to hold to the contrary, we would essentially make urban land possessors the insurers of all those passing on public sidewalks or streets.

In light of the principles set forth above, we hold that a possessor of land has no generalized duty to provide security measures on the premises so as to protect those off the premises, including passersby, from third party criminal activity on the premises. There may be an exception in the case of third party criminal actors invited or permitted on the land, and perhaps an exception in the case of known criminal activity by trespassers on the property, though we do not decide these issues here. There may be a further exception which will apply where defendant's construction or maintenance of the premises brings about a special or peculiar temptation or opportunity for criminal misconduct affecting those off the premises. Again, we do not conclusively define the parameters of any such duty.

Our conclusion that there is generally no such duty as plaintiff urges is consistent with common law negligence principles. We do not simply apply those common law rules, however, but do so in light of sound policy considerations. First, of course, is the policy expressed in *Younce v. Ferguson*, 106 Wn.2d 658, 724 P.2d 991 (1986) that a land possessor does not owe a duty of reasonable care as to the whole world. The land possessor is not the insurer of all those who may enter or pass by his land.

In this regard, cases from other jurisdictions which have adopted a standard of reasonable care under all the circumstances must be considered with that distinction in mind. For example, New York has abandoned traditional

landlord premises duty principles, *Basso v. Miller,* 40
N.Y.2d 233, 352 N.E.2d 868, 386 N.Y.S.2d 564 (1976), as
has California, *Rowland v. Christian,* 69 Cal. 2d 108, 443
P.2d 561, 70 Cal. Rptr. 97, 32 A.L.R.3d 496 (1968).[2]
Second, nearly all of the cases finding liability of a land
possessor for the acts of third party criminals have done so
in the context of a business and its invitee. Thus, there are
many cases discussing the issue which involve parking lots,
malls and other shopping centers, restaurants and patrons,
and common carrier and passenger–invitees. *E.g., Ronk v.
Parking Concepts of Tex., Inc.,* 711 S.W.2d 409 (Tex. Ct.
App. 1986) (patron in parking lot); *Galloway v. Bankers
Trust Co.,* 420 N.W.2d 437 (Iowa 1988) (patron in mall);
*Picco v. Fords Diner, Inc.,* 113 N.J. Super. 465, 274 A.2d
301 (1971) (restaurant patron in restaurant parking lot);
*Magaw v. Massachusetts Bay Transp. Auth.,* 21 Mass.
App. Ct. 129, 485 N.E.2d 695 (1985) (common carrier and
passenger); *Torres v. United States Nat'l Bank,* 65 Or.
App. 207, 670 P.2d 230 (1983) (bank patron). The issue also
has been addressed where a landlord is alleged to owe a
duty to a tenant, or a condominium homeowner's associa-
tion to a resident. J. Page §§ 11.13–11.17, 11.19. Analyses of
the cases tend to focus on these relationships and circum-
stances.

Plaintiff has not cited a single viable case where a duty
has been imposed under circumstances like those in this
case. To the contrary, even in a jurisdiction abandoning
traditional classifications of injured plaintiffs in the land
possessor context, one court has held no duty is owed under
circumstances comparable to those here. In *Waters v. New
York City Housing Auth.,* 69 N.Y.2d 225, 505 N.E.2d 922,

---

[2]In any event, the one California case which plaintiff cites which seems most
favorable to him is without precedential value. Cal. Misc. Rule 977(a) provides
that an opinion ordered not published may not be cited or relied upon. Plaintiff
relied upon a California Court of Appeals case which was ordered not published
by the California State Supreme Court. *Sally G. v. Orange Glen Estates Home-
owners Ass'n,* 182 Cal. App. 3d 789, 227 Cal. Rptr. 559, *review denied and ordered
not published* (Sept. 25, 1986). The opinion was therefore withdrawn.

513 N.Y.S.2d 356 (1987), the owner of a tenant building had not kept the building's security system in good repair. A passerby was accosted on the public street by a third party who forced her at knife point into the building, which was unlocked, and then to the roof, where she was raped and robbed. Evidence was presented showing that the front door lock had been broken or missing for at least 2 years and that other crimes involving outsiders had occurred in the building. An investigator testified on plaintiff's behalf that had the locks been in proper working order, in all probability the attack would not have occurred.

The court found it significant that plaintiff had no connection with the building where her injury occurred; under prior decisional law in that jurisdiction, if there had been such a relation a duty might have been owed by defendant owner. Lacking such connection, the court turned to other considerations affecting the duty issue, expressing the concern that there be "controllable limits" on liability. *Waters,* at 230. Some of the policy reasons which the court found compelling in finding no duty included: (1) the fact that the landowner had no control over either the acts of the primary wrongdoer or conditions on the public byways making such acts commonplace; (2) the virtually limitless liability of defendant and other landowners if legal obligations were extended to plaintiff and all in her position; and (3) the unlikelihood that the incidence of street crime would be meaningfully affected if duty were imposed, given the urban environment and all the nooks and crannies which afford criminals the privacy needed to commit their crimes. *Waters,* at 230–31. The court held that regardless of foreseeability of the ultimate harm, the landowner did not owe plaintiff a duty.

 Third, while rarely expressed, one characteristic often found in cases where a land possessor's duty to protect others from criminal assault is found is that the one found owing a duty has, among other characteristics, the ability to take precautions and the ability to fairly allocate the costs of such precautions. *See, e.g., Taco Bell, Inc. v.*

*Lannon,* 744 P.2d 43, 49 (Colo. 1987); *Moone v. Smith,* 6 Ga. App. 649, 651, 65 S.E. 712 (1909) (plaintiff enters saloon at defendant's invitation to contribute to profits of defendants).

Whatever the potential for effective cost spreading by an enterprise which benefits directly from its customers, that policy is not persuasive where the alleged duty is owed to all those off the premises who pass by on the public way. *See Blake v. Dunn Farms, Inc.,* 274 Ind. 560, 567, 413 N.E.2d 560 (1980) (duty of landowner to one on adjacent road distinguished from duty owed to business invitee in part on basis that duty of a "business property owner to an invitee is an extra burden based upon the relationship of the owner or occupier of the land to the one he invites for the benefit of the owner or occupier").

Fourth, it is important to keep in mind that the immediate cause of injury is the intentional criminal conduct of third parties over whom the defendants had no control.

Fifth, there is a basis to conclude that the high incidence of crime in an urban area does not favor imposition of the duty urged by plaintiffs, but instead cuts the other way. That is, if the premises are located in an area where criminal assaults often occur, imposition of a duty could result in the departure of businesses from urban core areas—an undesirable result. *See* J. Page § 11.7, at 300; *McNeal v. Henry,* 82 Mich. App. 88, 90 n.1, 266 N.W.2d 469 (1978) (involving business and invitee); *Stafford v. Church's Fried Chicken, Inc.,* 629 F. Supp. 1109 (E.D. Mich. 1986) (same).

Sixth, as both the Restatement and *Prosser & Keeton* indicate, one is normally allowed to proceed on the basis that others will obey the law. As a policy matter, this premise has legitimacy even in an area of urban crime because the alternative is to presume the need for extraordinary care by all to avoid the responsibility for the lawlessness of others.

Seventh, there is unfairness in placing the burden of ensuring the safety of the citizenry upon occupants of land

adjacent to public ways because protection of the public in general is a duty allocated to the government.

Ultimately, the policy question is one of fairness under contemporary standards. *Hunsley v. Giard,* 87 Wn.2d 424, 434–35, 553 P.2d 1096 (1976) (quoting Prosser, *Palsgraf Revisited,* 52 Mich. L. Rev. 1, 15 (1953)). "Essentially we are balancing the interest of the injured party to compensation against the view that a negligent act should have some end to its legal consequences." *Hunsley,* at 435. Even if some increased risk of harm might be attributed to defendants' acts or omissions here, that alone is an inadequate basis to impose upon defendants the duty plaintiff urges was breached here.

Finally, we briefly comment on one of plaintiff's arguments. Plaintiff makes much of the Restatement (Second) of Torts § 449 (1965), and cases applying the principle expressed there, that "[i]f the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the [defendant] negligent," that act, even if criminal, does not prevent the defendant from being liable. The difficulty with plaintiff's argument is that § 449 pertains to legal causation. It is found in the Restatement under chapter 16, topic 1, title C "Superseding Cause". Section 449 simply explains that if the third party conduct is a hazard which makes the defendant negligent, that third party conduct is not a superseding cause relieving the defendant of liability. Section 449 does not answer the question whether the defendant's conduct was negligent in the first place. That question is addressed in general by § 302B, and is considered at length above.

Summary judgment is affirmed.

CALLOW, C.J., and UTTER, DOLLIVER, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.