[No. 60804-5-I.   Division One.   April 13, 2009.]

JOYCE ROSENGREN ET AL., *Petitioners*, v. THE CITY OF SEATTLE ET AL., *Respondents*.

---

[11] RCW 9.94A.030(5); *State v. Riles*, 135 Wn.2d 326, 334, 957 P.2d 655 (1998).

[12] RCW 9.94A.010(7).

[13] *State v. Ammons*, 136 Wn.2d 453, 465, 963 P.2d 812 (1998).

[14] *State v. Ross*, 129 Wn.2d 279, 286, 916 P.2d 405 (1996).

566

*Harvey S. Grad*, for petitioners.

*Thomas A. Carr, City Attorney*, and *Suzanne K. Pierce, Assistant*, for respondent City of Seattle.

*Joseph P. Lawrence, Jr.* (of *Lawrence & Versnel, PLLC*), for respondents John or Jane Does V-XV, James H. Hughes, Sr., James H. Hughes, Jr., and Jane Doe Hughes.

*Joseph P. Lawrence, Jr.* (of *Lawrence & Versnel, PLLC*) and *Nicole K. McGrath* (of *Teamchild*), for respondents Anne Hughes, John Doe Hughes, and James and Anabel Hughes as trustees for the J-A Hughes Trust.

*Daniel B. Heid* on behalf of Washington State Association of Municipal Attorneys, amicus curiae.

¶1 APPELWICK, J. — Trees planted by a property owner are an artificial rather than a natural condition of the land. A property owner owes a duty to exercise reasonable care that no part of any trees planted by the owner poses an unreasonable risk of harm to the pedestrian using the abutting sidewalk. We reverse the trial court's grant of summary judgment.

FACTS

¶2 The facts are undisputed. In 1953, James and Annabel Hughes bought the property located at 4821 37th Avenue SW, Seattle, Washington. At some point prior to 1990, the Hugheses planted three birch trees on their property, adjacent to the sidewalk.

¶3 On July 28, 2003, Joyce Rosengren walked northbound on the west side of 37th Avenue SW. She tripped over a raised section of the sidewalk in front of the Hugheses' home. Rosengren suffered a distal fracture of the right wrist.

¶4 On July 28, 2006, Joyce Rosengren filed a tort action in King County Superior Court for damages relating to her fall. She named as defendants the city of Seattle (City); Seattle Department of Transportation (SDOT); Grace Cruncian, who is the director of SDOT; and the Hugheses.

¶5 Rosengren claimed that the defendants were liable as owners of the property or as parties otherwise in control of the property, owing a duty to provide for her safety while walking on the sidewalk. She also alleged the defendants had a duty to discover and correct or at least warn of the harm. Rosengren claimed damages including medical expenses and loss of wages and income. Ernest Rosengren, Joyce's husband, asserted a claim for loss of consortium.

¶6 The Rosengrens' expert, Daniel Johnson, determined that the uneven sidewalk rose as much as 1.12 inches above the surface and therefore constituted a tripping hazard. But, he noted that "[b]ased on both my personal observation and the photographs it is my opinion that the trip hazard was not conspicuous."

¶7 The Hugheses filed a motion for summary judgment, arguing that they owed no duty to Rosengren. The City opposed the summary judgment motion. In response to the Hugheses' motion for summary judgment, the City offered the declaration of Nolan Rundquist, the city arborist.

Rundquist stated that three white birch trees are planted approximately three feet from the sidewalk in the front yard of the Hugheses' home. He also opined that "[i]t is more probable than not that the cause of the small sidewalk offset was that the larger support roots of the white birch trees grew under the sidewalk and levered up the end of the concrete panel of the sidewalk." Rundquist concluded that "[t]he persons who planted or maintained the white birch trees in the yard . . . could have prevented the damage to the sidewalk by planting the trees a little father [sic] from the sidewalk."

¶8 On June 6, 2006, the City issued a street use warning to James and Annabel Hughes for damage caused by the trees, stating that permanent repair was required. The Hugheses' son ground down the sidewalk on October 26, 2006.

¶9 The trial court granted the Hugheses' motion for summary judgment as a matter of law and dismissed the Rosengrens' claims against the Hugheses. The City filed a motion for reconsideration. The court denied the motion.

¶10 The Rosengrens filed a notice for discretionary review. The City also filed a motion for discretionary review to the Court of Appeals, which was granted.

## DISCUSSION

■ ¶11 This court reviews a trial court's summary judgment order de novo. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). A motion for summary judgment may be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). All facts and reasonable inferences are viewed in the light most favorable to the non-moving party. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

■ ¶12 Rosengren asserts a claim of negligence, not strict liability, against the Hugheses. To establish a com-

mon law negligence claim, Rosengren must establish four elements: "(1) the existence of a duty . . . ; (2) breach of that duty; (3) resulting injury; and (4) proximate cause between the breach and the injury." *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). The threshold determination in this negligence action is whether a duty of care is owed by the defendant to the plaintiff. *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988); *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

¶13 The Hugheses' motion for summary judgment disputed only the duty element of a negligence claim. The singular question before this court is whether the Hugheses, as landowners with property abutting a public sidewalk, owed a duty of care to Rosengren, a pedestrian on that sidewalk. The Hugheses admit to planting the trees adjacent to the sidewalk. In viewing the summary judgment evidence in the light most favorable to the nonmoving party, we presume that the roots of the trees the Hugheses planted in their front yard uplifted the sidewalk, causing a tripping hazard, on which Rosengren tripped and was injured.

¶14 The majority of cases involving injuries to pedestrians on sidewalks have been decided under the special use doctrine.[1] It is no surprise that Rosengren

---

[1] *Edmonds v. Pac. Fruit & Produce Co.*, 171 Wash. 590, 593, 18 P.2d 507 (1933) (where a plaintiff who fell into a depression in the sidewalk created by the owner driving repeatedly over the sidewalk and causing its deterioration, the court recognized the rule of reasonable care and prudence and acknowledged there was sufficient evidence to sustain a verdict but reversed on other grounds); *James v. Burchett*, 15 Wn.2d 119, 124, 129 P.2d 790 (1942) (abutting property owner owed duty of care to pedestrian who slipped and fell on gravel accumulated on sidewalk, because of vehicles exiting from owner's graveled driveway); *Stone v. City of Seattle*, 64 Wn.2d 166, 168-69, 391 P.2d 179 (1964) (an apartment owner was held liable for injuries a pedestrian sustained when she fell into a hole in the sidewalk created by the weight of cars driving consistently over it; because it was foreseeable that tenants would drive directly over the sidewalk to reach their parking spaces rather than taking a circuitous route, the driving constituted a special use); *Turner v. City of Tacoma*, 72 Wn.2d 1029, 435 P.2d 927 (1967) (summary judgment for defendant reversed where plaintiff collided with fire escape extending into her pathway on city sidewalk, because fire escape was illegal and thus per se negligent); *Groves v. City of Tacoma*, 55 Wn. App. 330, 777

argues that the trees planted by the Hugheses adjacent to the sidewalk constitute a special use of the sidewalk. Generally, an owner or occupant of premises is not an insurer of the safety of pedestrians using the abutting sidewalk but must exercise reasonable care when he uses the sidewalk for his own purposes. *Stone v. City of Seattle*, 64 Wn.2d 166, 170, 391 P.2d 179 (1964). The Hugheses argue that they have no duty to a pedestrian under the common law unless they have made special use of the sidewalk. They argue that no case has held that the existence of healthy trees abutting a city sidewalk constitutes dominion and control necessary to be a special use.

¶15 The Hugheses are correct that no case has held that tree roots (or branches for that matter) exercise the dominion and control necessary to establish a special use of a street or sidewalk. We decline to extend the special use doctrine to trees abutting a street or sidewalk. Therefore, the cases involving the special use doctrine are of no application here. However, the Hugheses are incorrect that the special use doctrine is the only possible source of a duty for a landowner to a pedestrian using the abutting sidewalk.

¶16 The seminal case on landowner liability for injuries to persons occurring outside the land is *Albin v. National Bank of Commerce of Seattle*, 60 Wn.2d 745, 375 P.2d 487 (1962). *Albin* involved a tree that fell onto the highway, causing injury to a passing motorist.[2] *Id.* at 747. The owner of the property abutting the public highway where the tree had fallen had previously contracted to have the property logged. *Id.* at 749. He had not been to the site and had no actual knowledge of the condition of the land or the trees remaining on it. *Id.* at 751. The tree that fell was missing its top and had not been deemed suitable for

---

P.2d 566 (1989) (use of public sidewalk as exit from driveway gave rise to duty of reasonable care); *Seiber v. Poulsbo Marine Ctr. Inc.*, 136 Wn. App. 731, 738-39, 150 P.3d 633 (2007) (displaying merchandise on sidewalk constitutes a special use and creates duty to keep immediate area safe for pedestrians).

[2] The *Albin* court also considered the liability of the county, which owned the road where the plaintiff was injured, as well as the purchaser of the timber who logged the land. It concluded that neither was liable. 60 Wn.2d at 748-49.

lumber when the property was logged. *Id.* at 752. The tree stood 95 feet tall and 43 feet from the middle of the road. *Id.* at 747 n.1. It broke 25 feet above the ground in a wind storm. *Id.* The plaintiff's theory was that the removal of timber surrounding the tree increased the hazard—the risk that it would fall. *Id.* at 752. The court concluded:

> The trial court properly concluded that there was no duty to inspect and no liability so far as the owner was concerned (absent knowledge of a hazardous condition), so long as the forest remained in its <u>natural condition</u>; that the liability of the owner, if any, must be predicated on a dangerous <u>condition created</u> on its land, as a result of the logging operation, of which the owner knew or should have known; and presented the case to the jury on that theory.

*Id.* (emphasis added). The jury found no liability on behalf of the landowner. *Id.* However, the court's approval of the submission of the case to the jury necessarily acknowledges a duty could exist between the landowner and the driver on the adjacent road if the condition was one created on the land. The court drew a distinction between liability flowing from an artificial condition and that flowing from a natural condition on the land.[3]

¶17 We acknowledge that this case is factually distinct from *Albin*. No tree trunk fell on the pedestrian; rather, roots are alleged to have uplifted the sidewalk causing a tripping hazard. But, this fact goes to the nature of the risk, not the existence of a duty. The setting here is urban rather than rural. Likewise, this fact goes to the foreseeability of the risk, but not to the existence of a duty. *Simonetta v. Viad Corp.*, 165 Wn.2d 341, 349 n.4, 197 P.3d 127 (2008) (citing *Simonetta v. Viad Corp.*, 137 Wn. App. 15, 23 n.2, 151 P.3d 1019 (2007)). Here, rather than removal of surrounding trees creating the artificial condition and the risk, the

---

[3] The only other published case specifically involving landowner liability for falling trees is *Lewis v. Krussell*, 101 Wn. App. 178, 2 P.3d 486 (2000). It was not disputed that the trees toppled by the wind were natural to the site. The rule announced in *Albin* relative to trees in a natural condition was followed. *Id.* at 185-86. No issue of artificial condition was presented.

planting of the trees adjacent to an existing sidewalk created the risk.

¶18 Therefore, the question before us is whether the trees planted by the Hugheses are a natural or an artificial condition on the land. In 1991 the Supreme Court reiterated the proposition that a person in possession of land may owe a duty to others outside the land on the abutting sidewalk:

> A possessor of land owes a common law duty to "prevent artificial conditions on his land from being unreasonably dangerous to highway travelers." (Footnote omitted.) 5 F[owler V.] Harper, F[leming] James[, Jr.] & O[scar] Gray, [*The Law of*] *Torts* § 27.4, at 156 (2d ed. 1986); *see* Restatement (Second) of Torts § 368 (1965). The duty is founded on the principle that "[t]he public right of passage carries with it . . . an obligation upon the occupiers of abutting land to use reasonable care to see that the passage is safe." [W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen,] *Prosser* [*and*] *Keeton* [*on the Law of Torts*] § 57, at 388 [(5th ed. 1984)]. This duty applies to those passing by on a public walk. *Munger v. Union Sav. & Loan Ass'n*, 175 Wash. 455, 458, 27 P.2d 709 (1933).

*Hutchins*, 116 Wn.2d at 222 (some alterations in original). *Hutchins* involved a criminal assault on the abutting sidewalk. The general rule stated above was held not to be applicable to criminal acts. Nonetheless, the citation to the *Restatement (Second) of Torts* § 368, published after *Albin* was decided, is significant as indicating continuing approval of the rule announced in *Albin*, distinguishing between the duty for artificial conditions on the land and those that are natural. *Restatement (Second) of Torts* § 368 addresses liability for artificial conditions:

> A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to [them].

Comment b to *Restatement (Second) of Torts* § 363[4] further explains that trees planted or preserved are artificial conditions on the land:

> "Natural condition of the land" is used to indicate that the condition of land has not been changed by any act of a human being, whether the possessor or any of his predecessors in possession, or a third person dealing with the land either with or without the consent of the then possessor. *It is also used to include the natural growth of trees, weeds, and other vegetation upon land not artificially made receptive to them. On the other hand, a structure erected upon land is a non-natural or artificial condition, as are trees or plants planted or preserved,* and changes in the surface by excavation or filling, irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces.

(Emphasis added.)

¶19 A New Jersey court has considered similar facts to the case before us and framed the question as this:

> How does one characterize a defective sidewalk resulting from the spreading of roots from a tree planted by the property owner[?] According to the *Restatement 2d*, the planting of a tree is a "non natural or artificial condition." The growth of a tree root is, of course, a natural process. Is it then a natural condition or an artificial one, or a combination of both?

*Deberjeois v. Schneider*, 254 N.J. Super. 694, 700, 604 A.2d 210 (1991). After noting that Minnesota[5] and Florida[6] have concluded tree roots should be considered natural and not a basis for liability, the court concluded:

> But most authorities conclude that where the property owner plants a tree which causes an injury to another because it topples over because [sic] or its branch breaks or because its

---

[4] Section 363 of the *Restatement (Second) of Torts* defines "natural conditions": neither a possessor of land, nor a vendor, lessor, or other transferor thereof, is subject to liability for bodily harm caused to others outside of the land by a natural condition of the land other than trees growing near a highway.

[5] *Sand v. City of Little Falls*, 237 Minn. 233, 55 N.W.2d 49, 51 (1952).

[6] *Sullivan v. Silver Palm Props., Inc.*, 558 So. 2d 409 (Fla. 1990).

roots spread or because of some other reason, the property owner is liable.

*Id.* at 701. We agree.

¶20 We hold that trees planted by a landowner are an artificial condition on the land, and that an abutting land owner has a duty to exercise reasonable care that the trunks, branches, or roots of trees planted by him adjacent to a public sidewalk do not pose an unreasonable risk of harm to a pedestrian using the sidewalk.

¶21 The Hugheses argue that recognizing a duty, in the absence of a special use, would relieve the City of the primary liability to maintain the sidewalk, which it owns, contrary to *Rivett v. City of Tacoma,* 123 Wn.2d 573, 582, 870 P.2d 299 (1994). It does not. The duty imposed on the landowner, here, is the duty to restrain the tree so as not to injure the pedestrian. The duty of the City, as owner of the sidewalk, is to maintain the sidewalk in a manner that does not pose a risk of injury to a pedestrian. They are distinct duties.

¶22 We reverse and remand for trial.

DWYER, A.C.J., and BECKER, J., concur.