IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JACOB IVAN SCHMITT, | ) | No. 37974-4-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| POLLARD FAALOGO, individually; | ) | |
| PIERCE COUNTY DEPUTY RANKIN; | ) | |
| RN FRANKLIN; and JANE DOE 1-10 | ) | |
| and JOHN DOE 1-10, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| PIERCE COUNTY JAIL, a subsidiary of | ) | |
| Pierce County; and PIERCE COUNTY | ) | |
| DEPUTY WHALES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondents. | ) | |
| | ) | |
| | ) | |
| PIERCE COUNTY, a political subdivision | ) | |
| of the State of Washington, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CORRECT CARE SOLUTIONS, LLC, | ) | |
| formerly d/b/a CONMED, INC., | ) | |
| independent contractor, a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

PENNELL, C.J. — Jacob Schmitt appeals the summary judgment dismissal of his negligence claims against the Pierce County Jail. We reverse in part the order of summary judgment and remand for further proceedings.

FACTS

In June 2014, Jacob Schmitt and Pollard Faalogo occupied adjacent cells within a maximum security unit of the Pierce County Jail. The two men first met on June 16. The interaction was "[a]greeable." Clerk's Papers (CP) at 211. Mr. Schmitt and fellow inmate Jake Belanger shared food with Mr. Faalogo. Mr. Belanger's cell was on the same floor[1] and unit as those of Mr. Schmitt and Mr. Faalogo. Prior to the morning of June 17, Mr. Belanger had not noticed any problem with Mr. Faalogo or tensions between Mr. Faalogo and Mr. Schmitt.

Deputy Kent Wales was working in the jail on the morning of June 17. At approximately 7:00 a.m., Deputy Wales began a walk-through of the tier where Mr. Schmitt and Mr. Faalogo were housed. Deputy Wales manually opened nine cells in order to allow for out-of-cell time. Included in the nine cells were the ones occupied by Mr. Schmitt, Mr. Faalogo and Mr. Belanger. While opening the cells, Deputy Wales performed a welfare check. He observed everyone appeared to be asleep, or at least laying

---

[1] The Pierce County Jail refers to the "floors" as "tiers." CP at 342-43

2

in their beds. Deputy Wales then returned to the unit's staff station. After about 20 minutes he heard what he thought was a scream.

Around the same time, Mr. Belanger heard yelling and the sounds of an assault. Mr. Belanger was inside his cell and could not tell where the noises were coming from. The noises lasted a few seconds until Deputy Wales entered the unit to investigate. Deputy Wales believed the scream came from an inmate having a nightmare in the upper tier of the unit. He went upstairs and observed everyone appeared to be asleep. Deputy Wales did not hear additional noise. He went back downstairs and conferred with Mr. Belanger. Deputy Wales asked Mr. Belanger if he could tell where the noises were coming from. Mr. Belanger said he did not know. Deputy Wales then left the unit. The unit door made a loud booming sound after it shut behind Deputy Wales.

After Deputy Wales left, Mr. Belanger heard some scuffling sounds. He left his cell, looked around, and discovered Mr. Faalogo was inside Mr. Schmitt's cell, assaulting Mr. Schmitt. Mr. Belanger tried pushing on Mr. Schmitt's cell door, but it was locked. Mr. Belanger then went up to the window that separated the unit and the deputies' staff station. Mr. Belanger asked another deputy, Lynette Rankin, to remotely unlock Mr. Schmitt's cell.

At the time Mr. Belanger contacted Deputy Rankin, he believed he saw an emergency light for Mr. Schmitt's cell illuminated on the staff station monitor. Each cell in the unit was equipped with an emergency call button. If pushed, the button would activate a light within the deputies' staff station. The call lights are specific to individual cells and enable deputies to respond to a particular cell where an inmate might be in distress. Mr. Schmitt claims he pushed the call button in his cell during the assault. However, Deputy Wales did not recall seeing a call light. As a result, Deputy Wales was not alerted to the assault in Mr. Schmitt's cell until after Mr. Belanger asked Deputy Rankin for assistance.

After Deputy Rankin remotely unlocked Mr. Schmitt's cell, Mr. Faalogo left. Deputies then responded to Mr. Schmitt's cell and provided assistance to him. Mr. Faalogo was later detained. After an initial examination at the jail's medical clinic, deputies placed Mr. Schmitt in isolation when he refused to be housed with another inmate.

That same day, Mr. Schmitt continued to complain of pain and began coughing up blood. He was returned to the jail's medical clinic and eventually transported to St. Joseph's Medical Center for further evaluation. Mr. Schmitt was diagnosed with four fractured ribs, a hematoma and laceration to a kidney, a cervical strain, and acute pain.

4

Mr. Schmitt remained at St. Joseph's for two more days until he was discharged on June 19.

At the time, Pierce County had a contract with ConMed, Inc. to provide "medical services, which included the distribution of prescription medication to inmates." CP at 731. The medical staff employed by ConMed were "responsible for following the hospital discharge orders and distributing to [Mr. Schmitt] any prescribed medication(s)." *Id*. According to the St. Joseph discharge summary, Mr. Schmitt was instructed to begin taking four medications and to continue taking two others. These included pain medication.[2] Mr. Schmitt was also to be given "extra mattresses x 3" and medical housing. *Id*. at 484. He received a dose of Toradol on his June 19 return and was placed back in isolation with one extra mattress. Mr. Schmitt testified at his deposition that he requested pain medication, but did not receive it again, until he was given nonprescription Ibuprofen the evening of June 21. He also claims not to have received any further prescription pain medication until June 23.

## PROCEDURE

Nearly three years after the assault, Mr. Schmitt sued Mr. Faalogo, the Pierce

---

[2] The record on review does not identify which medication or medications were for management of pain.

County Jail, Deputies Wales and Rankin, and the ConMed medical staff member who attended to him after the assault. He alleged "the above-named deputies and Pierce County Jail were negligent in putting a violent inmate in a position where he could assault [Mr. Schmitt] and negligently failed to provide necessary medical attention to his injuries." CP at 4. Mr. Schmitt also alleged negligent medical treatment by medical staff. Pierce County later brought a third-party complaint for indemnity against ConMed.

Pierce County, ConMed and its medical staff moved for summary judgment.[3] Pierce County argued Mr. Schmitt failed: (1) to establish the standard of care owed to him by the jail or its deputies, (2) to show the jail had reason to anticipate the assault, and (3) to show the jail negligently failed to prevent the assault. In support of summary judgment, Pierce County submitted a report from its correctional facility operations expert, Richard Bishop. Mr. Bishop's professional experience arose from "inspecting and operating" jails. CP at 42. He also conducted a review of related law, standards, and practices prior to issuing a report. Mr. Bishop applied his expertise "to the sections of the Complaint beginning with Mr. Faalogo's placement into general population at the [Pierce County Jail] on June 17, 2014 through the point where [Mr. Schmitt] is alleged

---

[3] The record pertaining to the summary judgment filings of ConMed and its medical staff was not designated for inclusion in the record on review.

6

to be seen by an unknown female CONMED employee." *Id*.

Mr. Bishop concluded Pierce County fulfilled its duties toward Mr. Schmitt under the circumstances. It was his opinion that Mr. Faalogo and Mr. Schmitt were both properly classified and housed. Mr. Bishop indicated the information available to Pierce County on the morning of June 17 would not have alerted reasonable corrections officials to an impending assault. Mr. Bishop further opined that Deputy Wales reasonably responded to sounds from the housing unit and looked in the area from where he believed the noises originated. Mr. Bishop rejected as not credible the deposition testimony of Mr. Belanger where he indicated that Mr. Schmitt's call light at the staff station had been lit.

In response to the summary judgment motion, Mr. Schmitt voluntarily dismissed "his medical negligence claims." CP at 140. He also dismissed his claims against Deputy Rankin "per stipulation." Report of Proceedings (Jan. 11, 2019) at 3. Mr. Schmitt continued to assert Pierce County negligently handled the assault. Specifically, he alleged unlocking his cell while he was asleep, failing to respond to the emergency call system, and failing to check the safety of the inmates in the lower tier after hearing a scream constituted negligence. Mr. Schmitt also asserted Pierce County negligently "failed to comply" with hospital discharge instruction regarding his pain medication. CP at 140. He asserted this final issue as a matter of ordinary negligence, not medical negligence.

7

Mr. Schmitt did not believe an expert opinion was necessary to support his surviving

claims. If the superior court disagreed, Mr. Schmitt sought a continuance to obtain an

opinion.

After hearing oral argument, the superior court granted summary judgment

dismissal of Mr. Schmitt's complaint. In the same order, it denied Mr. Schmitt's motion

for a continuance to obtain expert testimony. The court reasoned Mr. Schmitt had already

received one continuance of the summary judgment proceedings, had made no prior effort

to find an expert, and did not identify how any new expert opinion would create a genuine

issue of material fact.

Mr. Schmitt appeals the summary judgment dismissal of his claims against Pierce

County and Deputy Wales.

ANALYSIS

*Standard of review*

"On appeal of summary judgment, the standard of review is de novo, and the

appellate court performs the same inquiry as the trial court." *Lybbert v. Grant County*,

141 Wn.2d 29, 34, 1 P.3d 1124 (2000). "When ruling on a summary judgment motion,

the court is to view all facts and reasonable inferences therefrom most favorably toward

the nonmoving party." *Id*. "A court may grant summary judgment if the pleadings,

affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "'A material fact is one upon which the outcome of the litigation depends in whole or in part.'" *Webb v. Wash. State Univ.*, 15 Wn. App. 2d 505, 515, 475 P.3d 1051 (2020) (quoting *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wash.2d 506, 516, 799 P.2d 250 (1990)).

The summary judgment process involves burden shifting between the parties. A defendant moving for summary judgment initially bears the burden of showing the absence of a material issue of fact for trial. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If this is met, the burden shifts to the plaintiff as the party with the ultimate burden of proof at trial. *Id*. The plaintiff must proffer the existence of admissible evidence sufficient to sustain each element of its case. *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). If the plaintiff fails this burden, the defendant is entitled to judgment as a matter of law. *Id.*

*The sufficiency of Mr. Schmitt's evidence*

Mr. Schmitt's complaint alleges several acts of negligence against Pierce County. The elements of a negligence claim are duty, breach, injury, and causation. *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). Pierce County

claims Mr. Schmitt cannot meet these elements because he has not produced expert testimony to elucidate the standard applicable to the elements of duty and breach.[4] Mr. Schmitt disagrees with the necessity of an expert.

"As a general proposition, expert testimony is not required to establish" a claim of negligence. *Petersen v. State*, 100 Wn.2d 421, 437, 671 P.2d 230 (1983). Nevertheless, expert testimony may be required in cases involving alleged violations of professional standards. *Id.* In such circumstances, the question of whether the defendant's conduct fell outside the required standard of care is a matter outside the knowledge of average jurors. *See Harris v. Robert C. Groth, M.D. Inc.*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983).

Resolving whether expert testimony is necessary in Mr. Schmitt's case requires closely analyzing the types of claims raised. It is readily agreed that jails owe inmates in their custody a duty to ensure health, welfare and safety. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 635, 244 P.3d 924 (2010) (plurality opinion). But what it takes for a jail to meet this obligation is not always apparent. Jails are complex institutions. Many of a

---

[4] Pierce County also argues Mr. Schmitt's briefing fails to comply with RAP 10.3. While there are some technical deficiencies with Mr. Schmitt's pro se brief, we are able to discern the nature of his arguments and the citations to the record. Accordingly, we review the merits of his claims. *See State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995).

10

jail's operational decisions require professional expertise outside the knowledge of an average juror. Nevertheless, some obligations are so basic and apparent that no expertise is necessary.

Keeping in mind that the necessity of an expert depends on the complexity of a plaintiff's claims, we analyze each of Mr. Schmitt's allegations of negligence against Pierce County.

One of the primary claims brought by Mr. Schmitt against Pierce County is that Pierce County negligently failed to prevent Mr. Faalogo's assault. Mr. Schmitt contends Mr. Faalogo's background should have prompted Pierce County to place Mr. Faalogo in a higher security setting. He also claims Pierce County should not have unlocked cells for recreation time without first ensuring the cell's occupants are awake and alert.

Mr. Schmitt's criticisms of Pierce County's safety protocols involve the type of professional judgment that require expert assistance. Inmate classification and recreation protocols involve multiple competing considerations requiring professional analysis. According to Pierce County's expert, the jail met professional standards in developing its policies. Mr. Schmitt did not present any expert opinion to the contrary. There is no evidence of specific threats by Mr. Faalogo that would have alerted the jail of a particular cause for concern. The assault surprised everyone, even Mr. Schmitt. Under these

11

circumstances, Mr. Schmitt has not produced sufficient facts alleging Pierce County negligently failed to prevent Mr. Faalogo's assault. *See Winston v. Dep't of Corr.*, 130 Wn. App. 61, 64, 121 P.3d 1201 (2005).

In addition to criticizing the jail for not preventing the assault, Mr. Schmitt also argues Pierce County negligently failed to respond to the assault in a timely manner. In support of this claim, Mr. Schmitt points to his testimony and that of Mr. Belanger, who indicated that the emergency call light to Mr. Schmitt's cell was illuminated at the staff station during the assault. The evidence construed in Mr. Schmitt's favor indicates Deputy Wales failed to notice the light. Had he seen the light, he and other officers would have been able to respond to Mr. Schmitt's cell more quickly and might have prevented some of Mr. Schmitt's injuries.

Mr. Schmitt's call light claim is straightforward and does not require expert assistance. While Pierce County's expert rejected the call light issue, he did so because he disbelieved the testimony of Mr. Belanger that the light had been illuminated. This factual position is contrary to the applicable summary judgment standard. If the emergency call button had been pushed and the call light was illuminated during the assault, as alleged by Mr. Schmitt and Mr. Belanger, a jury could have easily concluded that the failure to respond to the call light was negligent and that negligence contributed

to some extent to Mr. Schmitt's injuries. Pierce County was not entitled to summary judgment on this aspect of Mr. Schmitt's case.

Mr. Schmitt's final claim is that Pierce County was negligent in failing to provide him pain medication prescribed by St. Joseph's Medical Center. Although Mr. Schmitt dismissed his medical negligence claims against ConMed, the claim against Pierce County is different. Mr. Schmitt points out that as part of its nondelegable duty to provide medical care, jails are obliged to provide prescribed medication. Fulfilling this duty does not require medical judgment. It therefore is distinct from the claim that was dismissed against ConMed and its staff.

We agree with Mr. Schmitt that the claim against Pierce County is distinct and that there are sufficient facts in the record to support a prima facie claim of negligent failure to provide prescribed medication. When Mr. Schmitt returned to the jail from St. Joseph's Medical Center on June 19, he had been prescribed pain medication. Yet beyond an initial dose of Toradol, Mr. Schmitt claims the jail did not provide any further pain medication until June 21, when he was given some nonprescription Ibuprofen. Mr. Schmitt further alleges the jail did not provide him prescription pain medication until June 23. A reasonable juror could find the jail's unexplained failure to provide prescribed medication fell below its duty to provide access to health care. No expert assistance is necessary in

13

this regard. Thus, this claim was also not subject to Pierce County's arguments for summary judgment.

CONCLUSION

Summary judgment is reversed as to Mr. Schmitt's claims regarding the negligent failure to respond to the call light and the negligent failure to provide prescribed medications. In all other respects, the order of summary judgment is affirmed. This matter is remanded for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Staab, J.