CHARLES H. BURMEISTER, *vs.* ALEXANDER AND REBECCA HOWARD.

The Board of Trustees of Olympia had the right to vacate the alley in block 13, upon a petition of all the lot owners in said block, and upon a compliance of the requirements of the Statute.

Upon a vacation of the alley, under both the common and the statute law, the fee to the soil of the same vests in equal proportions in the owners of lots abutting on both sides of the alley, but if a different disposition was made by the ordinance, upon a petition of all the lot-holders, then these lot-holders and their grantees are estopped from setting up any right in contravention of said ordinance.

By the acts of the lot owners, seven feet from off the lots fronting on Main

street have been dedicated to the public, and the trustees had the power to make the replatting of block No. 13, in this case, and after this was done, and rights acquired under this replatting, the owners of lots who petitioned for this replatting and their grantees are estopped from questioning rights so acquired.

The action under out statute to recover the possession of real estate, not an action to try merely the abstract legal fee to the soil, but to determine who is entitled to the possession and, therefore, the holder of the naked fee may not recover possession, if by his acts the equitable title be in the adverse party.

The ordinance of March 3, 1860, moved the west half of block No. 13 seven feet eastward, and the lines and corners of the block moved with the block, and all lines and corners mentioned in deeds subsequent to the change of the block will be considered the lines and corners fixed by the ordinance, and not as they formerly existed.

And so in this case, beginning the measurements of the parties from the corners as fixed by the ordinance, and there is no conflict in the description of their several deeds, and no part of the land conveyed in one deed is conveyed in the other.

The power of Municipal Corporations, to be strictly construed and closely pursued, but within the scope of their authority, their ordinances have the force of statutes, and all persons to be affected thereby must take notice of the same, and so the parties here are charged with notice of the ordinance, and take their rights under their deeds, charged with the legal and equitable rights flowing from the ordinance.

Error to Second Judicial District.

Opinion by WYCHE, Associate Justice.

The right to a strip of land, fronting seven feet on Third street, and extending back sixty feet, and being a part of lot 2 in block 13, on the plat of the town of Olympia, was the matter in controversy in the Court below. Title in both parties is derived through Edmund Sylvester, who is the patentee of the land, and who laid off and platted that portion of the town of Olympia embracing the land in dispute.

The plaintiffs in the Court below instituted suit to recover the possession of this strip of land, and, in support of their right, presented to the Court the following evidences of title, viz:

1.  A deed, of date Aug. 4th, 1859, from Edmund Sylvester and wife to Wm. Cock, conveying a part of lot No. 2 in

block 13, according to the town plat, and more particularly described as follows:   "Commencing at the northeast corner of said lot, running thence west on Third street 40 feet; thence south 60 feet; thence east 40 feet, to an alley; thence north along said alley 60 feet to the place of beginning."

2.   A deed of conveyance, of March 23, 1866, from Wm. Cock to Alexander and Rebecca Howard, the plaintiffs below, of the same premises, with like words of description.

The defendant in the Court below set out in his answer the following evidence of his title:

1.   A deed from E. Sylvester and wife, of date July 20th, 1857, to Wm. G. Dunlap and Enoch H. Wilson, conveying certain lands, in the following words of description: "North half of lot No. 1, in block No. 13, and a part of lot No. 2, in block No. 13, measuring 60 feet in the direction of Main street and 20 feet in the direction of Third street, making in all a parcel of land 60 feet on Main street and 80 feet on Third street, as laid down on the plat of Olympia."

2.   A deed from William G. Dunlap, of date May, 1862, to Enoch H. Wilson, conveying the last described lot of land in the following words of description: "Beginning at southeast corner of Main and Third streets, thence east on line of Third street, 80 feet; thence south, parallel with Main street, 60 feet; thence west, parallel with Third street, 80 feet; thence along Main street to the place of beginning, the same being the north half of lot No. 1, in block No. 13, and part of lot No. 2, in block No. 13, on the plat of Olympia."

3.   A deed from Enoch H. Wilson, of date March, 1865, to Charles H. Burmeister, the defendant below, conveying the last named premises, and with like words of description.

4.   As an additional link in the defendant's chain of title, the defendant set up the acts and doings of the property-holders in said block No. 13, and the acts and ordinances of the town of Olympia touching the same.   The facts of this matter as they appear in this Court would seem to be these: Block No. 13, as originally laid out and platted, had a ten feet alley extend-

27

ing north and south through the center of the same; and on November 30th, 1859, all the property owners in said block, and among the number Wm. Cock, the grantor of Alexander and Rebecca Howard, the plaintiffs below, petitioned the Olympia "Board of Trustees" to vacate said alley, and to annex the west seven feet thereof to the owners in that block fronting on Main street, and to divide the remaining three feet equally between the lot owners on both sides of the alley, alleging as a reason that the alley was of little or no use, and that the owners of lots fronting on Main street had given off to the street seven feet from their fronts to widen said street, and that these lots were thereby inconveniently reduced in size; and on the 30th of March, 1860, the Board of Trustees passed an ordinance vacating the west seven feet of the alley, and declaring the same should be annexed to and belong to the owners of lots fronting ing on Main street who had dedicated seven feet from off their fronts to widen Main street, and directing the clerk of the Board to so change the plat of the town as to show the said vacation of ground, and to so move the lines of the said respective lot-holders as to conform the same to the vacation and annexation therein ordered; and it was further provided, that all town plats showing alleys and boundary lines on said block inconsistent herewith are declared vacated, and must be made to conform hereto; and as for some reason no disposition was made of the remaining three feet of the alley, the Board, by ordinance of date April 10th, 1862, disposed of the same by vacating the alley and annexing the three feet equally between lot-owners on both sides of the same, and directing a like change to be made in the plats and lines as to conform to the plat of block 13, as then fixed by ordinance.

On the trial of the cause below, the plaintiff therein, by motion and demurrer, for reasons stated in the same, asked the Court to strike out all these matters touching the acts of the Board of Trustees from defendant's answer, and the Court having so ordered, the parties were heard solely on their several and respective deeds of conveyance, and judgment was rendered thereupon in favor of the plaintiffs below, and the defendant

below having properly excepted to the ruling and judgment therein, brings now the same to this Court for review.

In the view of the Court, the determination of the powers of the Board in the vacation of the alley in question, and the disposition made of the soil, dispose of this case. The powers of incorporated towns in the vacation of lots, streets, alleys, commons, etc., and in the disposition of the soil, to be thereupon made, are defined in the acts of the 5th Session, pages 27 and 28. In this case, it would seem reasonably clear that the Board had the right, upon a presentation of a petition of all the lot-owners in the block, and upon compliance with the requirements of the statute thereto, to consider and move in the matter of the vacation of said alley; and their right of vacation has not been questioned in this Court, and we will proceed to consider their action in the premises, and to state the principles of law thereto applicable.

It may be premised that the defendants in error assume that every conveyance of real estate, or any interest therein, must be by deed, and that the plaintiff in error could show no title otherwise acquired. True, the statutes provide for the conveyance of real estate by deed, but do not contemplate that title to the same can be acquired in no other way, and among the other methods recognized by the statutes are, by will, descent and dedication. The case referred to by plaintiffs in error's counsel, *City of Cincinnati vs. The Lessees of White*, (6th Peter's, page 431,) will be found interesting as discussing the law of dedication, and shedding much light on this case. The doctrine of easements, as applicable to highways, has received from defendants in error's counsel a thorough and healthy exposition, and the views urged are accepted by the Court as law, they being in substance that when an easement is taken as a public highway, the soil and freehold remain in the owner of the land encumbered only with the right of passage in the public; and upon a discontinuance of the highway, the soil and freehold revert to the owner, and in the case of streets and alleys, the proprietors of adjacent lots own the soil to the middle of the street, subject only to this right of passage in the pub-

lic; and upon a discontinuance of such street or alley, the adjacent owners of lots on each side take the soil to the middle of the street. So, too, the doctrine urged that Municipal Corporations cannot go beyond the authority conferred by statute, and acts beyond this are void, and that their powers are to be strictly construed, and closely pursued, is accepted by the Court as a correct exposition of the law; and so if the plaintiff in error recovers, his recovery must be in accordance, and not in conflict with these accepted legal principles.

The third and fourth sections of the statutes of 1857–58, pages 27 and 28, provide for the disposition of the soil, in the case of the vacation of streets and alleys, and declare that if a street or alley be vacated, the same shall be attached to the ground bordering on such street or alley, and all right or title thereto, shall vest in the person or persons owning the property on each side thereof in equal proportions.

If, therefore, the petition to the Board of Trustees had asked only for the vacation of the alley, and had there stopped, and the Board had vacated the same, the disposition of the soil must have been in accordance with the statutes; and the matter for consideration is, does the asking in the petition for a different disposition of the soil open the door for the introduction of some other principle of law? By our statute, Sec. 2, page 26, laws of 1857–58, Edmund Sylvester, in making the plat of the town of Olympia, is considered as making a quitclaim deed to the public to the streets and alleys, and by the laws of Oregon, heretofore in force in this Territory, Sec. 2, page 260, he is considered as making a warrantee deed; and so, for the purposes of this case, it is immaterial under which statute the matter be considered. As the law provides that the soil on the vacation of streets and alleys shall go in equal proportions to adjacent lot owners, the city holds the title in trust for the public and these lot holders, that is to say, holds it to the end that the public may use the streets and alleys, and upon the discontinuance, to vest the soil in these lot holders. In this case, when the city proceeded to vacate this alley, the lot holders, who had certain rights under the law, came in and surrendered

these rights, and asked what disposition might be made of the vacated alley which the ordinance makes, and in the opinion of the Court, their action operates as an estoppel, precluding the owners of the lots and their grantees from asserting rights in contravention thereof. *Carver vs. Jackson, ex dem Astor et al.*, 4th Peters, 83, *et seq., City of Cincinnati vs. The Lessees of White*, 6th Peters, 437–8. If the position be conceded, however, that the Trustees had no authority to vest the legal fee as the ordinance does, and that in law the title is in adjacent lot owners in equal proportions, yet the equitable title may be otherwise, and the owner of the legal fee may have done some act so vesting that equitable title, and so preventing him from obtaining possession by the assertion of this fee. "For should it be admitted that the mere naked fee was in the lessor of the plaintiff, it by no means follows that he is entitled to recover possession of the common in an action of ejectment," *City of Cincinnati vs. White*, 6th Peters, 441; and the Court in the same case say, "the purpose for which this action is brought is not to try the mere abstract right to the soil, but to obtain actual possession." Therefore, whenever the owner in fee does an act which in equity gives possession to another, his naked fee will not carry him into possession over this outstanding equity. But there is another view of this case, and probably the leading one, and the case should be determined here under this view, perhaps, rather than under the disposition of the soil of the alley by the ordinance, though the two questions are somewhat blended, and may be considered as constituting in some sense only one question.

It will be seen, by reference to the petition and ordinance, that block 13 was replatted, and the street lines, corners and alleys ordered so changed as to conform to the re-plating. Now a reference to the powers of the trustees will show that this action was legitimate and the petition and ordinance will show that this re-platting was ordered to be as asked by all the lot owners in block 13. After this re-platting of block 13, and individual rights acquired with reference to it, the owners of lots and their grantees are estopped from questioning these rights, and cannot

compel parties acquiring rights subsequent to this re-platting to go back and interpret and determine their rights under the old platting, but their rights are to be determined and interpreted by the new platting. The ordinance of March 3, 1860, took up the west half of block 13, and carried it seven feet eastward, and set it down, and in this migration of the block the lines and corners did not drop out and adhere to their original positions, but traveled with the block, and so a chain drawn around the block where the ordinance left it will mark its lines and corners, and not one drawn around the place from which the block was taken. Flowing from this proposition is the fact that lines and corners mentioned in deeds made subsequent to this re-platting will be understood as the lines and corners established in the block as now platted, and not as the block was; and so in this case, when the deed of Wilson to Burmeister, of March, 1865, says "beginning at the south-east corner of Main and Third streets," that corner will be considered where the ordinance fixed it, and not seven feet in Main street where it once was, and so running east on a line of Third street, 80 feet from the true corner, will give Burmeister all the land he claims; and so when the deed from Wm. Cock to Alexander and Rebecca Howard, of March 23, 1866, says, "commencing at the north-east corner of said lot, running thence west on Third street 40 feet," that corner will be as fixed by the ordinance, and so going west forty feet on the line of Third street from this true corner, will not carry the line into the 80 feet line of Burmeister, and so in this view there is no conflict in the description of the two deeds, and no part of the land described in either deed is described in the other.

But it is said the map of the town does not show any change in the platting of block 13, and an inspection of it shows that to be true, and yet as a matter of fact Main street was widened seven feet, and the alley in question closed many years before the parties litigant acquired any interest in block 13, so that there is nothing in the plat of block 13, as it really exists, to mislead. But apart from this, municipal ordinances are akin to legislative enactments; a municipal corporation re-

sembling a legislature, their charter representing the constitution of the state an *imperium in imperio*, and, therefore, these ordinances within the sphere of their charter authority have all the force of statutes, and within the limits of its authority, all persons are bound by the acts of the corporation. (Sedgwick on statutory and constitutional law, pages 462 and 474.) As the citizen is presumed to know and take notice of the laws of the land, so too is the law of municipal ordinances. As from the views here taken, the law is with the plaintiff in error, the judgment below is reversed.