IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

LESLEY METTLER AULD,

        Respondent,

        v.

CITY OF SEATTLE, a municipal
corporation,

        Respondent,

and

14TH & DRAVUS, LLC, a Washington
Limited Liability Corporation,

        Appellant.

No. 86885-3-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, C.J. — 14th & Dravus LLC seeks the reversal of two different summary judgment orders and the final judgment entered following the jury's finding of liability for negligence in the suit Lesley Mettler Auld filed against it and the City of Seattle after she slipped and fell on the sidewalk adjacent to a property owned by 14th & Dravus. 14th & Dravus contends that the trial court erred as to an evidentiary ruling and its denial of a motion for judgment as a matter of law. We disagree and affirm.

FACTS

Lesley Mettler Auld[1] is extensively credentialed as a personal trainer, including as a "USA Track [and] Field Level 2 coach," "USA Cycling Level 1 coach," and National Association of Sports Medicine strength and conditioning specialist. She is a former college athlete, had competed in 14 "Ironman" races,[2] and was training for several other races at the time of the fall at issue here. The parties do not dispute that in July 2021, Mettler slipped and fell while walking on the sidewalk next to an apartment building owned by 14th & Dravus (D14) on West Dravus Street in Seattle.

Mettler stated in a later deposition that it was her first time walking on West Dravus and she was in the Queen Anne neighborhood that morning to meet with a client for her personal training business. Mettler had passed several people watering their lawns that morning and noted that the sidewalk "looked like some of the other wet sidewalks [she] had been walking across that morning." However, she said nothing indicated that the sidewalk "would be anything other than wet" and she "didn't expect it to be slimy." But it was, she fell, and she was injured. She called her husband for help, and he drove to her location and took her to the emergency room at the University of Washington Medical Center.

Subsequent clinical evaluations resulted in a diagnosis that Mettler had ruptured both of her quadricep tendons in the fall and damaged hardware in her

---

[1] Through trial and in briefing on appeal, Lesley Mettler Auld is referred to alternatively as Auld, Mettler Auld, and Mettler. We refer to her as Mettler, consistent with how she refers to herself in her respondent's brief.

[2] An "Ironman" is a long-distance triathlon race that includes biking, swimming, and running in a single day event.

ankle that had been placed there as a result of a previous injury. Dr. Virtaj Singh described that Mettler required three separate surgeries to repair the tendons but continued to be "symptomatic," mostly in her right knee. Singh also noted at the time of his evaluation in January 2023, that Mettler had "not been able to resume her previous high level of activities" and there had been "a significant impact to her mobility, vocation, and avocation" as a result of the injuries she sustained in the fall. Dr. Douglas Smith examined Mettler in July and November 2023 and opined that she would need at least three future surgeries to her right knee but, if those surgeries were to fail, amputation of the right leg above the knee was a possibility.

On May 27, 2022, Mettler filed a complaint for damages against the City of Seattle and D14. In that initial complaint, she alleged that D14 and the City had both failed in their respective duties to ensure that the sidewalk was safe for pedestrians, were "aware and had knowledge of" the conditions, and "ignored the problem and took no corrective action." She also averred that despite the fact that July 2021 had been "unseasonably dry, the sidewalk had an extremely slippery surface due to a buildup of sediment, organic material, water and/or algae" which made the sidewalk "hazardous," "unreasonably dangerous," and constituted a nuisance condition under the Seattle Municipal Code (SMC).[3] Mettler also contended that the slippery surface "was caused, at least in part, by water originating from" property owned by D14. Mettler claimed that the City and D14

---

[3] The complaint also specifically alleges that the defendants were "liable for nuisance," but that appears to have been based on the SMC definition of safety hazards that constitute nuisances. This was argued in the context of the respective duties of the City and D14, as presented in jury instruction 14, to keep the sidewalk free of, among other things, nuisances caused by "[v]egetation constituting a safety hazard" and not as a separate cause of action.

were thus liable for negligence. She further contended that she had suffered physical injuries as well as economic and noneconomic damages "as a direct result and proximate cause" of this negligence.[4]

On July 20, 2022, the City answered Mettler's complaint and asserted several affirmative defenses. These included that it was entitled to an allocation of fault, Mettler had failed to mitigate and was the proximate cause of her own injuries, and another party, D14, was the proximate cause of Mettler's injuries. D14's answer, filed on August 8, also contained affirmative defenses; particularly relevant here was its contention that Mettler's own contributory negligence accounted, at least in part, for her injuries.

In September 2022, D14 filed a motion for summary judgment that argued the incident had "occurred on City of Seattle's sidewalk and [was] allegedly caused by water emanating from property owned by the City." D14 averred that it could not be liable for three reasons:

> First, there is no general duty on adjacent property owners to protect visitors from dangers on adjacent land. Second, D14's acts of picking up garbage or power washing the sidewalk does not constitute a "special use" of the sidewalk; rather our courts view these types of activities as unactionable "neighborly maintenance." Finally, D14 cannot be liable under the Seattle Municipal Code because it does not create a private cause of action, nor would any alleged duty arise unless the City sent notice to require cleanup which did not occur before the Plaintiff's injury.

---

[4] Her husband, James Auld, also sought recovery for past and future loss of consortium, but this claim was later voluntarily dismissed.

In August, Mettler filed an amended complaint that added Stefano Rampazzo as a defendant and alleged that the dangerous condition on the sidewalk was due in part to water that had come from property he owned. Rampazzo, like the other defendants, filed an answer and affirmative defenses but was eventually dismissed from the lawsuit with prejudice because the parties agreed that there were "no genuine issues of material fact from which a jury" could find him liable.

D14's motion was supported by evidence and sworn declarations from Eric Balaban, an asset manager whose company was hired by D14, a hydrologist, and a surveyor.

The City and Mettler both opposed D14's motion. The City argued that the condition of the sidewalk on the date of Mettler's injury was attributable to "a large hedge growing over and onto it that blocks sunlight and leaves debris, creating conditions that allow moss to grow," D14 "as the landowner of the property adjacent to the sidewalk has a duty to maintain its hedge" to ensure the sidewalk is safe for pedestrians, and D14 had breached this duty by failing to maintain the hedge and clean the sidewalk. The City's opposition was supported by a declaration from the City's arborist, Nolan Rundquist, who opined that D14's failure to routinely trim the hedge and clear organic debris from the walking surface had contributed to the hazardous condition of the sidewalk.

Mettler's opposition emphasized that "there [was] no reasonable dispute that both [the City and D14] were acutely aware of the hazard but simply abdicated their respective legal responsibilities," and she provided case law in support of her argument that D14 "had a duty to restrain the hedge" that bolstered her contention as to its duty under the SMC. D14's reply in support of its summary judgment motion included a request for the trial judge to strike Rundquist's declaration on the basis that he was not qualified to opine on the ownership of land, but had nonetheless offered an opinion "regarding the ownership of the planting strip containing the complained of hedge and the hedge itself, and an opinion that the hedge caused the moss/algae growth." It further argued, as to Rundquist's latter

opinion, that he had failed to adequately develop the connection between the hedge and the organic material growing beneath it. On January 19, 2024, after a hearing on D14's motion, the court entered an order denying summary judgment.

In April 2024, Mettler filed a motion for partial summary judgment and specifically sought to strike the City's and D14's affirmative defenses. Mettler alleged that the City had "stated on the record that the City would be withdrawing all of its affirmative defenses directed at" her and further asserted that the purpose of her motion was to ascertain "whether [D14] intends to pursue and has sufficient facts to independently assert" the affirmative defenses it had previously articulated. On April 29, D14 filed its written opposition to Mettler's motion for partial summary judgment. Therein, D14 agreed to waive its affirmative defenses that Mettler had failed to state a claim and regarding assumption of risk. However, it also maintained that Mettler was contributorily negligent.[5] The City did not file a response to Mettler's motion for partial summary judgment. On May 10, the trial court granted Mettler's motion for partial summary judgment to strike the City's and D14's affirmative defenses.

The case proceeded to trial in May 2024 and concluded in June. The trial court's instructions to the jury included instruction 10, which mirrored 6 *Washington Practice: Washington Pattern Jury Instructions: Civil* 135.01, at 826 (7th ed. 2019), and stated,

> The owner or occupier of property adjacent to a public
> sidewalk has a duty to exercise ordinary care in connection with the

---

[5] D14 also argued that there remained a genuine issue of material fact as to its affirmative defense that Mettler had failed to mitigate her damages by continuing to exercise during the course of her treatment, but it does not assign error on appeal to the court's order that struck this affirmative defense.

use of the property so as not to make, or create conditions that make, the adjacent way unsafe for ordinary travel or to cause injury to persons using the public sidewalk.

After all parties had rested, the City and D14 both moved for judgment as a matter of law.[6]  The City's motion requested a ruling "pursuant to CR 50 that the hedge in question is owned by [D14] and is a 'use' by" D14 for purposes of instruction 10 regarding the duty of the "owner or occupier of property adjacent to a public sidewalk."  D14's motion contested the City's position and specifically averred that there was "no substantial evidence or reasonable inference to sustain a verdict against it."  Mettler did not file a response to either motion.

As to its own motion for judgment as a matter of law, D14 asserted no evidence had been presented that it had breached any duty of care and, separately, that it would prevail on its affirmative defenses.  The City opposed D14's motion for judgment as a matter of law and countered that the parties had provided "evidence of defendant [D14]'s negligence during trial."  The City specifically noted that D14's asset manager, Balaban, had confirmed during his testimony "(1) that the hedge shades the sidewalk, and (2) that [D14] knew the sidewalk was slippery, and knew it was responsible for keeping the sidewalk clean of leaves and debris and ensuring the hedge was not overgrown."  Mettler did not address D14's motion.

---

[6] The parties' motions were captioned as seeking a "directed verdict," which is outdated terminology.  Each was presented pursuant to CR 50, which offers the same relief as the former version of the rule governing directed verdicts but terms the process "judgment as a matter of law."  Accordingly, and despite the captioning in the trial court, we use the terminology that is consistent with the current version of our civil rules.

On June 20, the jury returned a verdict finding that D14 was negligent and that its negligence was a proximate cause of Mettler's injuries. The jury further found that the City's negligence, which it had conceded prior to trial, was also a proximate cause of Mettler's injuries. The jury awarded Mettler roughly 13 million dollars for past and future economic and noneconomic damages and attributed 48 percent of the fault to the City and the remaining 52 percent to D14. That same day, the trial judge entered judgment against the City and D14 for the full amount awarded by the jury based on the apportionment of fault.

D14 timely appealed.

ANALYSIS

I. Scope of Appeal

As a preliminary matter we note several assignments of error raised by D14 that are outside the scope of its appeal. D14's notice of appeal stated that it sought review of the "Judgment Against City of Seattle and 14th & Dravus LLC" and "all other orders or rulings that prejudicially affect the judgment." In its opening brief, D14 assigned error to the trial court's ruling that "preclud[ed] D14 from presenting evidence or from arguing that the hedge resided outside its abutting property" and contended that the trial court "erred in entering judgment against D14," at least in part, on this basis.

On May 1, 2024, D14 filed a motion in limine to "exclude any testimony or evidence suggesting that the line of hedges" were owned by D14. In turn, the City's motions in limine included a request that the trial court prohibit D14 "from arguing that it does not own the hedge" and to "instruct the jury that the hedge is

owned by" D14.  The trial court denied D14's motion and granted the City's just before the start of trial on May 30.  Despite this, D14 explicitly asserted during its opening statement that the area in question was "outside 14th & Dravus's property line.  It's in the City right-of-way, along with the sidewalk, the utilities, the road.  Same thing for the hedge.  The hedge is also outside of [D14]'s property."  During trial, on June 3, the City moved for a ruling that D14 "may not argue or attempt to introduce evidence that the hedge is not on its property" because it was contrary to law.  The trial court granted the motion and noted that "it just seem[ed] very clear on the law that [D14] own[ed] to the center of the roadway, and that the only thing the City ha[d] [wa]s an easement for the roads, and [D14] own[ed] what's underneath there."  D14 did not object to this ruling.  Later, the trial court instructed the jury that "[a]s a matter of law, the hedge at issue in this case is planted in the Dravus Street right-of-way whereupon the City of Seattle has an easement and the underlying land is owned by [D14]."  D14 did not object to this jury instruction.

D14 has assigned error to the court's ruling on the motions in limine, but does not meaningfully engage with the challenge in its briefing and fails to provide argument or citations to legal authority as required by RAP 10.3(a)(6).  Thus, it has abandoned the assignment of error on this issue.

II.    Denial of Summary Judgment on Ownership of Land and Duty

D14 first contends that the trial court erred when it denied its motion for summary judgment because there was not a genuine issue of material fact as to whether D14 owned the land where the hedge was planted and, therefore, whether it had a duty to ensure the hedge did not create a hazardous condition on the

sidewalk. In response, the City avers that summary judgment would have been improper and "D14 misunderstands the definition of a 'right-of-way,' which is merely an easement across D14's property. D14 retains ownership of the property and owes a related duty to pedestrians using the adjacent sidewalk."[7]

A. General Legal Framework and Additional Procedural Facts of Litigation

Summary judgment is governed by CR 56. Summary judgment is proper if the evidence establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56(c). "[W]e review summary judgment orders de novo and engage in the same analysis as the trial court." *Borton & Sons, Inc. v. Burbank Props., LLC*, 196 Wn.2d 199, 205, 471 P.3d 871 (2020). The party seeking summary judgment has "the initial burden to show the absence of a genuine issue of material fact. This burden may be met by showing an absence of evidence to support the nonmoving party's burden of proof at trial." *Dang v. Floyd, Pflueger & Ringer, PS*, 24 Wn. App. 2d 145, 158, 518 P.3d 671 (2022) (citation omitted). Where, as here, the moving party is the defendant in a civil action and satisfies that initial showing, the burden then shifts to the plaintiff to "establish the existence of [each] essential element that [they] bear[] the burden of proving at trial." *Samra v. Singh*, 15 Wn. App. 2d 823, 832, 479 P.3d 713 (2020). "The evidence set forth must be specific and detailed. The responding plaintiff may not rely on conclusory statements, mere allegations, or argumentative assertions." *Id.* (footnote omitted). "A genuine issue of material fact exists where

---

[7] Mettler's response brief does not separately address D14's summary judgment motion, instead electing to adopt the City's briefing on the issue pursuant to RAP 10.1(g).

reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). We consider "the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

As the plaintiff in this case, Mettler had the burden to prove each of the elements of her negligence claim at trial. The elements of negligence are "(1) the existence of a duty owed to the complaining party, (2) a breach of that duty, (3) a resulting injury, and (4) proximate cause between the breach and the injury." *Est. of Essex v. Grant County Pub. Hosp. Dist. No. 1*, 3 Wn.3d 1, 14, 546 P.3d 407 (2024). Our court has held that negligence actions are generally not amenable to resolution on summary judgment. *Miller v. Likins*, 109 Wn. App. 140, 144, 34 P.3d 835 (2001).

D14's main argument on summary judgment was that there was no genuine issue of material fact as to its duty to ensure the sidewalk was safe to traverse because the sidewalk was only *adjacent* to their land, the maintenance that D14 had performed in the area did not constitute a special use which could also give rise to a duty, and the SMC did "not create a private cause of action" or any duty. Under a "special use" theory, a duty arises when a landowner "uses a sidewalk for [their] own special purposes" as such use triggers "a corresponding duty to maintain the walk in a reasonably safe condition for its usual and customary

pedestrian usage." *Seiber v. Poulsbo Marine Ctr., Inc.*, 136 Wn. App. 731, 738, 150 P.3d 633 (2007).[8]

Here, the City had alleged that D14's special use was permitting tenants to drive over the sidewalk to reach parking located behind the apartment building. The City argued that this regular vehicle traffic over the sidewalk by D14's tenants had contributed to the sidewalk cracking and, because D14's hydrologist had opined that this was one of the places the groundwater was welling up, D14's special use had thus contributed to the continued presence of groundwater on the sidewalk, which gave rise to a duty to maintain the sidewalk. However, this theory of duty was not pursued after the court denied D14's motion for summary judgment.

D14's motion also disclaimed any duty arising from the SMC, specifically SMC 15.72.010 and .020 which address sidewalk maintenance. SMC 15.72.010(A) mandates that the director of transportation notify owners of adjacent properties when sidewalk conditions are unsafe and direct them to remedy the situation[9] and .020 provides the requirements for such notice and the process for the imposition of assessments where the property owner fails to act pursuant to

---

[8] In *Seiber*, the defendant had used "the boardwalk for its own special purposes by displaying its merchandise outside its store and, therefore, it had a duty of care to keep the area immediately surrounding its display safe for pedestrians." 136 Wn. App. at 738-39.

[9] In its entirety, SMC 15.72.010(A) reads as follows:

Whenever, in the judgment of the Director of Transportation, the condition of any sidewalk, or any portion thereof, in the City is such as to render the same unfit or unsafe for purposes of public travel, or require clearing, cleaning, repair, or renewal, said official is authorized, empowered, and directed to serve upon the owner of the property immediately abutting upon the sidewalk, a notice advising such owner of the condition thereof and instructing the owner to clear, clean, repair, or renew the same.

the notice.[10]  Both the City and Mettler had initially argued that D14 had a duty under these code provisions but also ultimately abandoned these theories.

In support of this position in the trial court, D14 offered various declarations and a land survey map that it averred established that the hedge was outside of the property line but did not provide any authority to support the legal conclusion that lot lines are controlling as to the question of ownership.  The City opposed the motion and contended that D14 had a duty to maintain the hedge that overshadowed the sidewalk, the hedge had "creat[ed] conditions that allow[ed] moss to grow," D14 engaged in a special use of the sidewalk by letting tenants drive over it to reach parking behind the apartment building, and the resulting cracks from this special use had made the sidewalk more dangerous, which triggered a duty for D14 to mitigate that danger.  Mettler also opposed D14's motion and argued that *Rosengren v. City of Seattle* imposes a duty on a landowner to maintain their property such that it does not create hazardous conditions on the abutting sidewalk.  149 Wn. App. 565, 203 P.3d 909 (2009).  The trial court explicitly relied on *Rosengren* in its denial of D14's motion for summary judgment.

---

[10] SMC 15.72.020 states the following:
> The notice provided for in Section 15.72.010 shall specify a reasonable time, to be stated therein, within which such clearing, cleaning, repair or renewal shall be done, and shall state that in case the owner shall fail to do such clearing or cleaning or to make such repairs or renewals within the time therein specified, the Seattle Department of Transportation will clear or clean the walk or make such repairs or renewal forthwith, and will report to the City Council at its next regular meeting, or as soon thereafter as possible, the date to be definitely stated, an assessment roll showing the lot or parcel of land immediately abutting on that portion of the sidewalk so improved, the cost of such improvement or repair, and the name of the owner if known; and that the Council will hear any or all protests against the proposed assessment.

B.      Ownership of Land and Hedge

Because ownership of the land where the hedge is located is one basis for the existence of a duty of care here, we consider that preliminary question before proceeding to the second aspect of the order denying D14's motion for summary judgment.  The law regarding land burdened by public easements for things like roads and sidewalks is well settled.

> Unless the contrary is made to appear by competent evidence, the established rule of the common law followed in a majority of the states is that the abutting landowner will be held to own the fee in the public way in front of his or her property to the center of it, subject to the public easement, unless the owner has been divested of title, as by an accepted dedication, condemnation, or by other means.

*Ownership of streets*, 10A McQuillin Mun. Corp. § 30:35 (3d ed.) (citations omitted).   Washington's adherence to this common law rule predates our statehood.  In 1867, our Supreme Court held,

> when an easement is taken as a public highway, the soil and freehold remain in the owner of the land encumbered only with the right of passage in the public; and upon a discontinuance of the highway, the soil and freehold revert to the owner, and in the case of streets and alleys, the proprietors of adjacent lots own the soil to the middle of the street, subject only to this right of passage in the public.

*Burmeister v. Howard*, 1 Wash. Terr. 207, 211 (1867).  "When the public holds only a right-of-way easement, fee title to the land underlying the street remains with the platter: 'the laying out of a street is not a surrender of title.'"  *Holmquist v. King County*, 182 Wn. App. 200, 208, 328 P.3d 1000 (2014) (quoting *Chlopeck Fish Co. v. City of Seattle*, 64 Wash. 315, 323, 117 P. 232 (1911)).  The subsequent conveyance of that land conveys title to the middle of the street when the land has been offered for sale as a plot next to a platted street.  *Id.* at 210.

- 14 -

D14 presented a land survey it had prepared for litigation that it contended sufficiently established that the hedge was located in the public right-of-way outside of its property. At oral argument before this court, we inquired as to whether D14 had case law to support its contention that lot lines are controlling "as to ownership and responsibility for a tree or woody shrub within the right of way abutting the lot line."[11] In response, D14 conceded that there was not a case "that deals specifically with [the question of whether] the abutting owner ha[s] a responsibility for vegetation within the public right of way."[12] Instead, D14 offered *City of Tacoma v. Scofield*, 138 Wash. 162, 244 P. 257 (1926).[13] But D14 cannot use this case to disclaim ownership. In *Scofield*, a pedestrian was injured after stepping through a hole in a boardwalk and sought damages from the City of Tacoma who, in turn, sought damages from Scofield as the abutting landowner. *Id.* at 162-64. Our state Supreme Court held that the City of Tacoma could not recover from Scofield because the evidence showed that "Scofield never had anything to with the construction or *maintenance of the walk*." *Id.* at 164 (emphasis added). This case does not support D14 in its disclaimer of ownership because at argument on its motion for summary judgment, D14 conceded that it did occasionally trim the hedge and had previously power-washed the sidewalk, both of which are acts of maintenance that distinguish D14's position from Scofield's.[14]

---

[11] Wash. Ct. of Appeals oral arg., *Mettler Auld v. City of Seattle*, No. 86885-3-I (Oct. 30, 2025), at 2 min., 36 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/video/division-1-court-of-appeals-2025101179/.

[12] *Id.* at 3 min., 8 sec.

[13] *Id.* at 3 min., 23 sec.

[14] On November 12, 2025, after oral argument before this court, D14 filed a motion to offer additional authority to support its disclaimer of ownership. The City filed an answer to the motion that averred D14's motion failed to comply with either RAP 10.1 or 10.8. D14 then filed an

However, D14 did satisfy its burden to make an initial evidentiary showing in support of its motion for summary judgment. D14's survey map was evidence that supported a reasonable inference that the hedge and the land where it was planted were not owned by D14. This was sufficient to shift the burden to the City and Mettler to demonstrate that there was a genuine issue of material fact as to the ownership of the land in question.

The City responded with relevant legal authority, including *Puget Sound Alumni of Kappa Sigma, Inc. v. City of Seattle*, 70 Wn.2d 222, 226, 422 P.2d 799 (1967), that quoted and reiterated the statement of law from *Burmeister*. At the hearing on the motion, the City emphasized this line of legal authority and noted that

> the city also identifies and catalogs what it calls "street trees." Any tree or big hedge, anything that the city owns, and that is public information. It's on the internet. And this hedge is not a street tree, and that's [sic] means it's not owned by the City of Seattle. And, not surprisingly, [D14] has continued to maintain that tree.

This was sufficient for the trial court to conclude that there was a genuine issue of material fact as to who owned the hedge and the land on which it was planted. Here, while D14 disclaimed ownership, the cases the City presented supported the application of an inference that, if the City didn't own the land or hedge in question, then D14 did. Further, even if D14 could prove that it did not own the land, the City did not have any records that the hedge was city property, and D14 had already admitted to pruning the hedge, which supports an inference of ownership of the hedge, or at a minimum, awareness of a duty to control it. The City's disclaimer of

unsolicited reply in support of its motion. Having considered the motion and briefing of the parties, we deny the November 12, 2025 motion to accept additional authorities.

ownership, along with the legal authority provided, was sufficient to create a genuine issue of material fact for trial.

We follow the well-established precedent that states that a landowner's property extends to the middle of the street and is merely burdened with an easement when a City chooses to open a public right of way through the landowner's property. *See, e.g., Burmeister*, 1 Wash. Terr. at 211; *Puget Sound Alumni*, 70 Wn.2d at 226; *Kiely v. Graves*, 173 Wn.2d 926, 931, 271 P.3d 226 (2012). This binding authority supports the trial court's denial of D14's motion for summary judgment as to the question of ownership. Accordingly, the trial court did not err in so ruling.

### C.    Duty of Landowner

D14's other core contention at summary judgment, in addition to asserting that it did not have a duty to restrain the hedge because it did not own the land where the hedge was planted, was that its acts of maintenance did not constitute "a 'special use' of the sidewalk" which would give rise to a duty. In addition to the survey map that went directly to the question of ownership, D14 also offered a declaration from a hydrologist who opined that the water on the sidewalk was groundwater that did not originate from D14's property, though the source of the water was not disputed by the parties. D14 further submitted a declaration from its asset manager, Balaban, who stated that D14 had previously performed only routine maintenance of the sidewalk and hedge, including landscaping, cutting the grass, trimming foliage and power washing the sidewalk, and had closed the sidewalk when it iced over during winter months. While these declarations did not

further D14's assertion as to property ownership, they were relevant to the question of the existence of a special duty of care and D14's knowledge of the sidewalk hazard. D14's initial showing on summary judgment as to this aspect of the issue of duty was sufficient to shift the burden back to the City and Mettler, who then had to establish a genuine issue of material fact to be determined by the jury.

The City opposed D14's position that it did not own the hedge or land where it sat and argued,

> There is no question that [D14] owns the hedge. While the abutting property owner may make use of the planting strip in a manner not inconsistent with the City's easement—as [D14] has done here by maintaining and preserving a hedge in that area—an owner of property adjacent to a public sidewalk has a duty to refrain from making the adjacent way unsafe or to cause injury to people using the sidewalk.

Mettler's response to D14's motion addressed ownership only in passing and instead focused on the duty owed by D14 based on *Rosengren*, its knowledge of the hazard, and its failure to address it.

The existence of a duty is a question of law that we review de novo. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Division One of this court has previously considered the duty of a landowner to prevent plants on their land from creating hazardous conditions on a nearby sidewalk. *See Rosengren*, 149 Wn. App. at 567. There, Rosengren tripped over a portion of sidewalk that had been raised up by the roots of a tree located on the defendant's property and brought suit against both the property owners and the City of Seattle. *Id.* at 568. The property owner argued that they did not owe a duty to Rosengren and moved for summary judgment, which the trial court granted. *Id.* at 568-69. However, this

court reversed on appeal and held that "trees planted by a land owner are an artificial condition on the land, and that an abutting land owner has a duty to exercise reasonable care that trunks, branches, or roots of trees planted by [them] adjacent to a public sidewalk do not pose an unreasonable risk of harm to a pedestrian using the sidewalk." *Id.* at 575. In doing so, the panel relied on *Albin v. National Bank of Commerce of Seattle*, 60 Wn.2d 745, 375 P.2d 487 (1962)[15] but noted several factual distinctions between that case and Rosengren's. *Rosengren*, 149 Wn. App. at 572. We explained that the differences in the facts of the two cases went to the nature and foreseeability of the risk, not the existence of the duty. *Id.* Crucially, we explained that "the duty imposed on the landowner, here, is the duty to restrain the tree so as to not injure the pedestrian" and the special use doctrine is not the *only* possible origin of duties that a landowner may owe to a pedestrian. *Id.* at 575, 571.

D14 would have us read this holding narrowly; it argued before the trial court that *Rosengren* should not apply because D14 did not own the hedge and did not plant the hedge, both of which prevented a duty from arising. Mettler responded that *Rosengren* was applicable because the City and D14 had a shared responsibility and noted, "*Rosengren* actually speaks to that. You don't have to have exclusive control. It can be shared control. And that's actually what was happening. They weren't maintaining it sufficiently."

---

[15] In *Albin*, the landowner had engaged in logging activity on their property, but the contracted loggers left a tree behind that was not suitable. In a storm, that tree fell onto the nearby roadway and injured a passerby. 60 Wn.2d at 747-50.

- 19 -

Here, the plant in question is a laurel hedge, not a tree, and the sidewalk was made hazardous not by roots pushing up the sidewalk, but by the accumulation of organic material that had fallen from the hedge and the algae that had grown in its shade and worsened as a result of continued moisture from groundwater. However, these are not reasons to limit application of the holding in *Rosengren*. As we concluded in that case, these differences should be considered as factors in the assessment of the nature and foreseeability of the risk presented by the conditions at issue here. This is so because, as *Rosengren* explains, a divergence of specific facts goes to risk but *does not negate* the existence of a landowner's duty. The application of this case law supports an inference that D14 had a duty to ensure the sidewalk was safe for pedestrians, which was sufficient to establish a genuine issue of material fact to survive D14's motion to dismiss on summary judgment.

The City and Mettler carried their respective burdens to establish that there were genuine issues of material fact regarding both D14's ownership of the hedge and corresponding duty to maintain it, such that the trial court did not err when it denied D14's motion for summary judgment.

III.    Grant of Summary Judgment on Contributory Fault

Next, D14 avers that the trial judge erred when she granted Mettler's summary judgment motion on the question of her contributory negligence[16]

_____

[16] RCW 4.22.005 establishes this affirmative defense, although it uses the term "contributory fault." Because the doctrine predates this statute, much of the controlling case law uses "contributory negligence." However, consistent with recent prior opinions of this court, we use the statutory language in our analysis of the affirmative defense. *See Hosick v. Cmty. Health*

because a "genuine issue of material fact remained for trial [as to] whether [Mettler] exercised reasonable care for her own safety." In her response brief on appeal, Mettler contends that D14 "failed to identify any specific facts supporting contributory negligence, producing no evidence to support its affirmative defense." (Emphasis omitted.)

We again apply the same summary judgment framework laid out in Section II.A, *supra,* for our review of this assignment of error. Generally, issues relating to negligence and proximate cause will survive summary judgment. *Ruff v. County of King,* 125 Wn.2d 697, 703, 887 P.2d 886 (1995). "However, 'when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law.'" *Id.* at 703-04 (quoting *Hartley v. State,* 103 Wn.2d 768, 775, 698 P.2d 77 (1985)). Contributory fault involves "'some breach of duty on the part of the injured person.'" *Skarpness v. Port of Seattle*, 52 Wn.2d 490, 494, 326 P.2d 747 (1958) (quoting *Ewer v. Johnson*, 44 Wn.2d 746, 759, 270 P.2d 813 (1954)). "Contributory negligence is an affirmative defense and the burden of proving it rests on the defendant." *Hughey v. Winthrop Motor Co.*, 61 Wn.2d 227, 229, 377 P.2d 640 (1963). "In order to prove contributory negligence, the defendant must show that the plaintiff had a duty to exercise reasonable care for [their] own safety, that [they] failed to exercise such care, and that this failure is the cause of [their] injuries." *Gorman v. Pierce County*, 176 Wn. App. 63, 87, 307 P.3d 795 (2013).

---

*Network of Wash.*, No. 86636-2-I, slip op. at 12 (Wash. Ct. App. Dec. 22, 2025) (unpublished), https://www.courts.wa.gov/opinions/pdf/866362.pdf.

Under GR 14.1, we may cite to unpublished opinions as necessary for well-reasoned opinions. *Hosick* is cited here as an illustration of our use of the statutory term and we expressly adopt the reasoning set out in its brief explanation of the evolution of the relevant terminology. *Id.,* slip op. at 12-13.

This is most often "a factual question for the jury." *Id.* at 87-88. Our Supreme Court has explained the duty of the care a pedestrian should observe on a sidewalk as follows:

> (a) A pedestrian on a sidewalk who has no knowledge to the contrary may proceed on the assumption that the city has performed its full duty and has kept the sidewalk in a reasonably safe condition; (b) a pedestrian is not required to keep [their] eyes on the walk immediately in front of [them] at all times; (c) the fact that there is something in a pedestrian's path which [they] could see if [they] looked and which [they do] not see because [they do] not look, does not constitute contributory negligence as a matter of law unless there is a duty to look for that particular thing.

*Blasick v. City of Yakima*, 45 Wn.2d 309, 313-14, 274 P.2d 122 (1954) (citations omitted); *see also Millson v. City of Lynden*, 174 Wn. App. 303, 310, 298 P.3d 141 (2013).

Mettler's motion for partial summary judgment requested that the trial court strike D14's affirmative defense of contributory fault and specifically asserted that there was "no evidence Mrs. Mettler-Auld failed to exercise reasonable care for her own safety under the facts and circumstances." Mettler separately averred that the City had previously indicated it was withdrawing its own affirmative defenses.[17] Mettler explicitly contended that she "did not and could not see the invisible and thin layer of slimy organic material hiding under the water" and had assumed that the moisture she saw on the sidewalk was the result of a lawn being watered. In support of her position, Mettler offered a declaration from Joellen Gill, her expert witness on the safety and ordinary use of walking surfaces, who opined that the "walkway was in a hazardous condition at the time of Ms. Mettler's fall

---

[17] Mettler alleged that this was conveyed during a deposition and the City does not dispute it, although the transcript of the deposition in question was not included in the record on appeal.

incident" and Mettler "was behaving in a manner that was consistent with foreseeable human behavior at the time of her slip and fall accident." Mettler also identified an admission by John Stoner, D14's property manager assigned to the apartment building on West Dravus Street where, when discussing the conditions created by the water on the sidewalk during his deposition, he stated, "It's hard to see, you know, exactly what's underneath it." Mettler asserts in her briefing on appeal that the evidence presented by the parties was such that "no reasonable jury could find that the algae was visible based on the photographs in Gill's report, nor would any reasonable pedestrian have understood the potential danger from the wet sidewalk."

D14's opposition to Mettler's motion primarily relied on her deposition statements. In the trial court, D14 argued that

> Mettler Auld tried to walk through a sidewalk allegedly with "a buildup of sediment, organic material, water and/or algae." Even so, Plaintiff never testified that the water had an "invisible" layer of algae or other material making the sidewalk slippery; in fact, she told her doctor that there was "black slime."

In its briefing on appeal, D14 contends that a "reasonable jury could find that [Mettler] acted unreasonably under the circumstances by taking no precautions for her own safety" and, further, despite Mettler's claim that the hazard was concealed, "her own expert photographed the alleged algae on the sidewalk, proving it was visible to the naked eye." However, at oral argument before this court, Mettler contested the provenance of the photograph in Gill's report, correctly noting that the caption underneath the photo indicates that it was provided to Gill by Mettler's

counsel, who had received it *from D14* in discovery.[18]  Critically, the record before us does not contain any information regarding the provenance of this photograph; when it was taken, by whom, and to what extent it reflects, accurately or otherwise, the condition of the sidewalk on the day of the incident.  We also note that D14 did not rely on this photograph, or any other, to contest Mettler's motion for summary judgment as to contributory fault in the trial court.

Summary judgment was proper here.  Mettler's initial showing was sufficient to shift the burden to D14; she offered depositions, her own and that of Stoner, that supported an inference that Mettler had no way of identifying the hazard present on the walking surface.  Further, she argued that despite the fact that D14 had the burden to establish specific facts to substantiate its affirmative defense, it lacked "sufficient evidence to support its case."  The latter contention alone would have been adequate to shift the summary judgment burden back to D14 because the moving party's initial burden to establish that there is no genuine issue of material fact may be satisfied by simply "showing an absence of evidence to support the nonmoving party's burden of proof at trial."  *Dang*, 24 Wn. App. 2d at 158.  D14 subsequently failed to meet its burden to establish a genuine issue of material fact as to Mettler's alleged contributory fault because, while it, too, offered Mettler's deposition, it failed to identify specific facts to defeat her summary judgment motion.  Mettler did have a duty as a pedestrian.  See *Blasick*, 45 Wn.2d at 313-14.  However, it was proper for her to proceed under the assumption that the sidewalk was safe, she was not required to keep her eyes on the walking

---

[18] Wash. Ct. of Appeals oral arg., *supra*, at 15 min., 17 sec.

surface at all times, and, even if she could have noticed the hazard through a more careful inspection, unless D14 established that she had a duty to so inspect, her failure to do so cannot give rise to contributory fault. *See Millson*, 174 Wn. App. at 310. Mettler's deposition testimony alone did not establish a genuine issue of material fact but, rather, comported with our Supreme Court's explanation of the bounds of the duty of a pedestrian.

The trial court did not err when it granted Mettler's motion for summary judgment dismissal of D14's affirmative defense of contributory fault.

IV.   Denial of Motion for Judgment as a Matter of Law

Finally, D14 contends that the trial court erred when it denied its motion for directed verdict, or more properly, for judgment as a matter of law because "the hedge did not proximately cause the accident because it was not a but-for cause of the algae." The City responds that the trial court's denial of this motion was correct because "it was the specific conditions created by the hedge and D14's failure to maintain it that caused the slippery conditions on the sidewalk where Ms. Mettler Auld fell." Mettler did not separately address this assignment of error in her response brief but, rather, elected to adopt the City's briefing on this issue pursuant to RAP 10.1(g).

CR 50(a)(1) permits judgment as a matter of law,

> [i]f, during a trial by jury, a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against the party on any claim . . . that cannot under the controlling law be maintained without a favorable finding on that issue.

- 25 -

As with decisions on summary judgment, we review a trial court's ruling on motion for a judgment as a matter of law de novo. *Johnson v. Wash. State Liquor & Cannabis Bd.*, 197 Wn.2d 605, 611, 486 P.3d 125 (2021). "'Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party.'" *Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 915, 32 P.3d 250 (2001) (quoting *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 29, 948 P.2d 816 (1997)). Substantial evidence is that which is "'sufficient to persuade a fair-minded, rational person of the truth of the declared premise.'" *Id.* (quoting *Brown v. Superior Underwriters*, 30 Wn. App. 303, 306, 632 P.2d 887 (1980)).

As to the specific argument D14 presents here, a "proximate cause of an injury is defined as a cause that, in a direct sequence, unbroken by any new, independent cause, produces the injury complained of and without which the injury would not have occurred." *Fabrique v. Choice Hotels Int'l, Inc.,* 144 Wn. App. 675, 683, 183 P.3d 1118 (2008). Proximate cause includes both cause in fact and legal cause; the "'cause in fact inquiry focuses on a "but for" connection, [while] legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend.'" *Adgar v. Dinsmore*, 26 Wn. App. 2d 866, 880, 530 P.3d 236 (2023) (alteration in original) (internal quotation marks omitted) (quoting *Meyers v. Ferndale Sch. Dist.,* 197 Wn.2d 281, 289, 481 P.3d 1084 (2021)), *review denied*, 2 Wn.3d 1014 (2024). "The 'but for' test requires a plaintiff

to establish that the act of complained of probably caused the subsequent disability." *Daugert v. Pappas*, 104 Wn.2d 254, 260, 704 P.2d 600 (1985).

D14 filed its motion for judgment as a matter of law after testimony had concluded and the parties had rested, and it specifically argued that the City had failed to prove that D14 had "violated any standard of care." This was so, it averred, because "there ha[d] been no evidence whatsoever that the condition of the sidewalk at the time of the incident was caused by [D14's] failure to trim the hedge. Without such evidence, it [would have been] impossible for a reasonable juror to conclude that a failure to trim the hedge caused the subject incident." The City's answer to the motion was primarily a reiteration of its prior assertions that D14 owned the hedge, had a duty to restrain it, and had not provided evidence to the contrary as to either of these two points. The City again emphasized that D14's breach of its duty of care, as the owner of the land adjacent to the sidewalk that contained the hedge, had caused Mettler to fall and was responsible for her resulting injuries.

The testimony of Rundquist, the City's arborist, was the primary evidence presented to the jury addressing the cause of the moss or algae that contributed to the hazardous condition on the sidewalk. On direct examination, Rundquist testified as follows:

> [CITY:] Okay. Mr. Rundquist, what's causing moss or algae to grow on this section of sidewalk shown in the photo here?
>
> [RUNDQUIST:] It looks like there is moisture present on a fairly frequent basis. And, again, the shade in any—any organic material that would fall down from the hedge would—would encourage the growth of moss.

[CITY:] So does shade encourage the growth of moss or algae?

[RUNDQUIST:] Yes, it does, and moisture.

[CITY:] Okay. What about organic material on the sidewalk? Dirt, leaves, things like that? Does that—

[RUNDQUIST:] Yes. That would—again, that would just make a better growing medium for the moss.

[CITY:] Okay. How about the fact that this sidewalk, you can see that there's matter on it. It looks like it hasn't been cleaned. Does that contribute to the growth of moss and algae?

[RUNDQUIST:] Yes. Frequent cleaning would discourage the growth of moss.

Rundquist's testimony constitutes substantial evidence sufficient to persuade a reasonable person that the surface of the sidewalk would not have become hazardous and Mettler would not have fallen and been injured but for D14's failure to restrain the hedge and frequently clear the area.

D14 nevertheless contends that this testimony was inadequate, because the "groundwater, not the hedge, undisputedly caused the algae" and Rundquist did not explicitly state there would be no algae or moss if the hedge was not present. However, Rundquist explicitly testified that the shade, accumulation of organic material, and failure to clean the sidewalk all contributed to the growth of moss and algae on the walking surface, which directly disputes D14's position that groundwater alone caused the algae. Here, but for causation can be satisfied so long as it was probable that D14's actions or inactions caused Mettler's injury. *See Daugert*, 104 Wn.2d at 260. Rundquist's testimony was not meaningfully refuted. As such, consistent with the rule as articulated by our Supreme Court in *Daugert*, the jury could reasonably conclude from the available evidence that D14's failure

to ensure that the conditions on its land did not make passage on the adjacent public sidewalk unsafe for pedestrians probably caused the hazard that, in turn, caused Mettler's subsequent fall and resulting injuries. The trial court did not err when it denied D14's motion for judgment as a matter of law.

Affirmed.

WE CONCUR: